RAQUEL ÁLVAREZ FIGUEREDO, demandante y recurrida, *v.* SEBASTIÁN GONZÁLEZ LAMELA, demandante y recurrente.

*Número:* RE-90-293 *Resuelto:* 14 de julio de 1995

*Roberto Santana Aparicio*, de *Del Toro & Santana*, abogado del recurrente; *Luis H. Sánchez Caso*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

A solicitud del recurrente, Sebastián González Lamela, reconsideramos la opinión y sentencia emitida en el caso de autos. Luego de evaluar la cuestión planteada a la luz de la ley y jurisprudencia aplicables, consideramos prudente variar la norma general impuesta en el caso de epígrafe.

# I

El 28 de octubre de 1993 emitimos opinión y sentencia —*Álvarez Figueredo v. González Lamela*, 134 D.P.R. 374 (1993)— en el caso de autos en la cual determinamos que una edificación sobreelevada en un condominio no puede tener carácter privativo, aun cuando ésta se haya destinado a dicho uso por consentimiento unánime de los titulares del condominio. Basamos nuestra determinación en que, a tenor con la Ley de la Propiedad Horizontal vigente, 31 L.P.R.A. sec. 1291 *et seq.*, el vuelo es un elemento común general no susceptible de apropiación particular. En consecuencia, confirmamos la sentencia sumaria parcial dictada por el foro inferior que determinó que las construcciones que había llevado a cabo González Lamela en la azotea del Condominio McLeary eran ilegales y le prohibió llevar a cabo construcciones adicionales en ésta.

Posteriormente, González Lamela presentó una moción de reconsideración en la cual solicitó que dictamináramos, entre otras cosas, "que le corresponde válidamente al Consejo de Titulares decidir sobre el derecho de sobreelevación y sobre la validez de las construcciones realizadas en el Condominio en el ejercicio de ese derecho". Moción de reconsideración, pág. 11. Basó su posición, primordialmente, en la diferencia que existe a su juicio entre "una reserva previa de sobreelevar y la autorización para sobreelevar, otorgada por el Consejo de Titulares con posterioridad a la constitución del régimen y a la venta de los apartamentos". (Énfasis suprimido.) Íd., pág. 5.

El 3 de diciembre de 1993 emitimos una resolución en la cual otorgamos un término a la parte recurrida para que se expresara sobre la moción de reconsideración presentada por González Lamela. Ésta ha comparecido, y estando en posición de resolver, así lo hacemos sin ulterior trámite.

## II

La controversia que nos ocupa surge de la interacción entre el concepto del "vuelo" y el derecho de sobreelevación. Por lo tanto, debemos examinar cómo hemos tratado estos conceptos en el pasado. Veamos.

■ A. Como indicamos en nuestra opinión original, el vuelo ha sido definido como "la parte ideal del edificio susceptible de ser construida, no un elemento material tangible, sino el espacio aéreo en la parte superior de la cubierta o techo en el que puede ser elevada la edificación". *Consejo de Titulares v. Vargas*, 101 D.P.R. 579, 585 (1973).

■ A partir de 1976, éste es un elemento común general del inmueble por disposición de ley. Art. 11 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291i. En consecuencia, el vuelo no puede ser objeto de división por parte de la comunidad y cualquier pacto contrario es nulo. 31 L.P.R.A. sec. 1291k.

■ Íntimamente relacionado al concepto del vuelo se encuentra el derecho de sobreelevación, el cual ha sido definido como el "derecho de utilizar el vuelo para elevar la edificación". *Costa Linda, Inc. v. Registrador*, 109 D.P.R. 861, 869 (1980). Con relación a éste, el Art. 18 de la Ley de la Propiedad Horizontal dispone que se requerirá el consentimiento unánime de los condóminos para "hacer nuevos pisos". 31 L.P.R.A. sec. 1291p.

■ En *Costa Linda, Inc. v. Registrador*, supra, se planteó si el propietario de un edificio podía reservar el derecho de sobreelevación para uno de los apartamentos al someter el edificio al régimen de propiedad horizontal. Señalamos entonces, a tenor con la ley, que el vuelo es un elemento común general necesario y añadimos que dicha conclusión no está reñida con el Art. 18 de la propia ley, *supra*, pues "[a]l impedir el Art. 11 que se haga reserva del vuelo en perjuicio de su carácter comunal, no impide que la comu-

nidad lo aproveche mediante el ejercicio de su derecho de sobreelevación en virtud del Art. 18. Ambas disposiciones, lejos de contradecirse, se complementan". *Costa Linda, Inc. v. Registrador,* supra, pág. 869.

Establecimos, además, que el derecho a sobreelevar también está reservado a los condóminos y que sólo pueden disponer de éste por acuerdo unánime conforme con el Art. 18 de la Ley de la Propiedad Horizontal, *supra*. Señalamos lo absurdo que sería interpretar que el vuelo es un elemento común fuera del alcance de una reserva de derecho y que, por el contrario, pueda reservarse el derecho a sobreelevar a un apartamento en particular. *Costa Linda, Inc. v. Registrador*, supra, pág. 869.

Posteriormente, en *Soc. de Gananciales Manzanares v. Suárez*, 122 D.P.R. 46 (1988), nos enfrentamos a otra situación en la cual el desarrollador constituyó en la escritura matriz del condominio una reserva de derecho sobre su techo equivalente a una reserva del derecho a sobreelevar el condominio. Para sostener la validez de dicha reserva, el recurrente Vadiz Colón adujo que el Art. 18 de la citada ley permitía que, mediante el consentimiento unánime de los titulares del condominio, un particular utilizara el vuelo para beneficio particular. Ante dicho reclamo señalamos que

...el lenguaje del Art. 18 de la Ley de la Propiedad Horizontal, *supra*, no puede tener el efecto de permitir lo que la ley prohíbe en su Art. 11, *supra*. Esto es, no puede uno de los titulares del condominio, mediante el consentimiento unánime de los demás titulares, construir una estructura cerrada sobre un elemento común general, convirtiéndolo en un elemento privativo, en clara violación a las disposiciones de la Ley de la Propiedad Horizontal y a nuestra jurisprudencia, que prohíben que ciertos elementos comunes generales, como lo son el techo y el vuelo de un edificio, se conviertan en elementos comunes limitados o en elementos privativos.

Se ha reconocido que mediante el consentimiento unánime de los titulares se pueda disponer del derecho de utilizar el vuelo para elevar la edificación. No obstante, dicha elevación ha de ser para beneficio de toda la comunidad, ya que el ser el vuelo

un elemento común general y el derecho a sobreelevación un derecho comunal reservado a la comunidad de condóminos, la utilización de los mismos no puede tener el efecto de variar su naturaleza común, ya que todo pacto contrario a su naturaleza común será nulo. (Escolios omitidos.) *Soc. de Gananciales Manzanares v. Suárez,* supra, págs. 53–54.

■ Dicha determinación estuvo basada en la premisa de que al sobreelevar un condominio se invade su vuelo. Olvidamos en aquella ocasión que dicho concepto no constituye un elemento tangible del inmueble, sino "el espacio aéreo en la parte superior de la cubierta o techo en el que puede ser elevada la .edificación". *Consejo de Titulares v. Vargas,* supra, pág. 585. "Como tal, (el vuelo) es inacabable o, por lo menos y en lo que respecta a su extensión vertical, es ilimitado." M.J. Godreau, *El Condominio*, San Juan, Ed. Dictum, 1992, pág. 94.

■ En consonancia con dicha concepción del vuelo, resulta forzoso concluir que al sobreelevar un condominio no se invade su vuelo. Aunque se ejercite un derecho de naturaleza comunal, el de sobreelevación, no se varía la naturaleza de elemento común del vuelo. Tampoco se convierte el techo del condominio en un elemento privativo.

Una vez construida la nueva edificación, su techo se convierte en el techo del condominio y, como tal, es un elemento común general. 31 L.P.R.A. sec. 1291i. Igual ocurre con el vuelo del edificio, el cual comenzará a partir de la azotea de la nueva edificación y, por ser inacabable o ilimitado, no se habrá visto disminuido por la edificación sobreelevada; es decir, dicha sobreelevación no varía la naturaleza del vuelo.

Tal interpretación es cónsona con el Art. 18 de la Ley de la Propiedad Horizontal, *supra*, que permite que, previo al consentimiento de todos los titulares, se construyan nuevos pisos y no impone restricción alguna que implique que dicha nueva edificación tenga que dedicarse al uso común de los titulares. Así lo habíamos determinado ya en *Costa Linda, Inc. v. Registrador*, supra, cuando dispusimos que

los Arts. 11 y 18 de la Ley de la Propiedad Horizontal, *supra*, lejos de contradecirse se complementan.

■ En suma, todo Consejo de Titulares tiene la facultad de sobreelevar el condominio cuyo destino dirige y dedicar la edificación así construida para beneficio particular, siempre que previamente se obtenga el consentimiento unánime de todos los titulares del inmueble, 31 L.P.R.A. sec. 1291p, y consiga los permisos correspondientes de la Administración de Reglamentos y Permisos así como cualquier otra autorización requerida por ley.

■ B. La norma que hoy imponemos le hace honor al postulado de interpretación legislativa que exige que los estatutos se interpreten tomando en consideración los fines que persigan y la política pública que los inspire. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991).

■ En Puerto Rico existe una clara política pública en favor de la utilización de edificios multipisos sometidos al Régimen de la Propiedad Horizontal como unidades de vivienda. *Soto Vázquez v. Vázquez Torres*, 138 D.P.R. 282 (1995). En la consecución de dicha política pública, hemos establecido que la interpretación de la Ley de la Propiedad Horizontal debe ser "constructiva e imaginativa". *Castle Enterprises, Inc. v. Registrador*, 87 D.P.R. 775, 781 (1963). Inclusive, dicha interpretación debe ajustarse a la esencia de la horizontalidad: la coexistencia de diversos pisos de dominio exclusivo con el condominio forzoso e inescapable de elementos comunes. *Consejo Tit. Cond. McKinley Court v. Rullán*, 126 D.P.R. 387 (1990).

■ La norma que impusimos en *Soc. de Gananciales Manzanares v. Suárez*, supra, no respondió a las necesidades del régimen. La prohibición de reservar el derecho de sobreelevación a favor de un particular no tiene otro propósito que proteger a los titulares de los desmanes negociadores del desarrollador o del titular inicial único del condominio. Fue en esas circunstancias que sostuvimos su

validez tanto en *Costa Linda, Inc. v. Registrador,* supra, como en *Soc. de Gananciales Manzanares v. Suárez,* supra. Nunca se concibió como un límite a los derechos dominicales del Consejo de Titulares, una vez vendidos todos los apartamentos del condominio sometido al régimen de propiedad horizontal.

 Aunque ciertamente el derecho propietario de los titulares sobre sus apartamentos particulares no cuenta con la misma extensión que el dominio concebido por nuestro Código Civil en otros contextos (*Soto Vázquez v. Vázquez Torres,* supra), el Consejo de Titulares, como organismo supremo del régimen con personalidad jurídica (*Arce v. Caribbean Home Const. Corp.,* 108 D.P.R. 225–223 (1978)), tiene un dominio pleno sobre todas las áreas comunes del condominio. Cónsono con nuestra trayectoria de facultar al Consejo de Titulares con amplios poderes en el ejercicio de sus prerrogativas, tal dominio tiene que incluir forzosamente la facultad de sobreelevar el condominio para dedicarlo a beneficio particular, siempre que no se disminuyan los derechos de los titulares sobre los elementos comunes que conforman el inmueble. Godreau, *op. cit.,* págs. 93–94.

### III

En vista de que, contrario a nuestra determinación inicial, existe una posibilidad *de iure* de que se hayan convalidado, mediante el consentimiento unánime de los titulares, los cambios realizados por González Lamela al edificio, entendemos procedente devolver el caso al tribunal de instancia para que se determine si se aprobaron por unanimidad las construcciones efectuadas por los titulares hasta ese momento.

Tal proceder responde a que, a pesar de que a la reunión de 6 de agosto de 1987 del Consejo de Titulares del Condominio McLeary no asistió la totalidad de los titulares

—véase el texto pertinente de la Minuta de dicha reunión, Alegato de la parte recurrida, pág. 4— existe una controversia sobre el posible cumplimiento de la Junta de Directores con las disposiciones del Art. 38-C de la Ley de la Propiedad Horizontal sobre el voto unánime de los condóminos. 31 L.P.R.A. sec. 1293b-3.([1])

Por los fundamentos que anteceden, *procede que reconsideremos nuestra decisión anterior y revoquemos la sentencia sumaria parcial recurrida. Además, devolvemos el caso al Tribunal de Primera Instancia, Sala de San Juan, para que determine si los cambios hechos por González Lamela estuvieron avalados unánimemente por los titulares del condominio.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Negrón García emitió una opinión disidente. El Juez Asociado Señor Rebollo López "disiente por entender que no procede la reconsideración de la Opinión originalmente emitida por el Juez Asociado Señor Negrón García".

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

I

En su estructura interna la opinión mayoritaria ignora el trasfondo procesal y los verdaderos hechos; se apuntala en unas premisas erróneas.

---

([1]) Este artículo estatuye el procedimiento a seguir para obtener el voto de todos los titulares que no asistieron personalmente a la reunión pertinente. Éste dispone que se notificará de la decisión tomada al condómino y provee un término de treinta (30) días para que éste se oponga. Transcurrido éste sin oposición del condómino, se entenderá que está conforme con la decisión tomada.

*Primero,* contrario a como sostiene el recurrente Sebastián González Lamela, cuando compró su *Penthouse 2 no* adquirió derecho de *sobreelevación* alguno. Por lo tanto, no podía romper el techo estructural ni penetrar desde el interior de su apartamento hacia la azotea para edificar sobre ésta una estructura de concreto y madera. Su escritura de adquisición sólo dispuso que la azotea "sería un elemento privado" de su *penthouse.* Como dijimos en la opinión original, conforme con *Consejo de Titulares v. Vargas,* 101 D.P.R. 579, 586 (1973), "el derecho de sobreelevación 'por traer consigo la introducción al edificio de nuevos elementos arquitectónicos, económicos y estéticos, y por afectar fundamentalmente el régimen de copropiedad, *no puede nacer de inferencias o especulaciones. Su concesión debe ser clara y explícita'. ... Distinto a su contención, no se le concedió el derecho de sobreelevación para invadir el vuelo del edificio.* La escritura matriz es sumamente parca. Se limitó a concederle el uso de la azotea; *ello no es suficiente para inferir el derecho de sobreelevación".* (Énfasis suplido y en el original.) *Álvarez Figueredo v. González Lamela,* 134 D.P.R. 374, 379–380 (1993).

Nótese que, en el caso de autos, la escritura matriz únicamente dispuso que la azotea sería un elemento privado de su *penthouse.* Aparte de las razones expuestas en *Consejo de Titulares v. Vargas,* supra, es justo consignar que, *de ninguna forma,* nuestro ordenamiento jurídico permite conceder el derecho de sobreelevación a una persona que tiene a su favor exclusiva e individualmente el *uso de la azotea.* Esto es distinto a cuando a un titular, por unanimidad de los condóminos y con previa determinación de beneficio para toda la comunidad, se le concede *el uso del vuelo,* esto es, el derecho de sobreelevación.

Al distinguir entre el concepto "techo"(1) y el concepto

---

(1) Es precisamente del techo, no de la azotea, que nace el vuelo. Expresamos en *Costa Linda, Inc. v. Registrador,* 109 D.P.R. 861, 870 (1980):

"azotea", dijimos en *Soc. de Gananciales Manzanares v. Suárez*, 122 D.P.R. 46, 53 (1988):

> La interacción y equivalencia funcional de ambos conceptos las sintetiza Borja Martínez, a la pág. 171 de su obra *"La Propiedad de Pisos o Departamentos en el Derecho Mexicano"* al decir que techo es "la parte inferior y superior de un edificio que lo cubre y cierra; y azotea es la cubierta llana de un edificio dispuesta para poder andar por ella de donde se deduce según su configuración física un techo puede o no ser al mismo tiempo azotea". [Citando a *Consejo de Titulares v. Vargas*, 101 D.P.R. 579, 583 (1973).]
>
> En este caso, el área individualizada fue la parte superior del edificio comercial, área no dispuesta para andar sobre ella y hacia la cual no existía acceso alguno a través de los apartamentos residenciales. Dicha área era un techo no susceptible de utilizarse como azotea.
>
> El techo, a diferencia de la azotea, constituye un elemento común general no susceptible de apropiación particular. A tenor con el Art. 13 de la ley, 31 L.P.R.A. sec. 1291k, el techo, como todo elemento común, ha de permanecer en indivisión forzosa, siendo todo pacto en contrario nulo. El aquí recurrente no podía erigir la estructura aquí en controversia, ya que el área que ocupa dicha estructura, o sea, el techo y el vuelo del edificio comercial, son elementos comunes generales necesarios cuya naturaleza no puede ser variada por ley. *Arce v. Caribbean Home Const. Corp.*, 108 D.P.R. 225 (1978). (Escolio omitido.)

Tan claro es el propósito de no conceder derecho de sobreelevación, como derivado de la adjudicación a un particular del derecho de *uso* exclusivo de la azotea, que en *De La Cruz v. Toro Sintes*, 112 D.P.R. 650, 658 (1982),[2] expresamos:

---

"Diríase que el vuelo es una proyección vertical de la superficie, *que comienza desde el techo del edificio.* Es un elemento ideal, intangible, pero tan importante como cualquier otro y más importante que muchos." (Énfasis suplido.)

[2] Aquí se trataba de una demanda de *injunction* contra Emilio Ortiz Alfonso, titular de un *penthouse* a quien se le confirió el uso exclusivo de la azotea, para obligarlo a eliminar un portón y una puerta de madera instalados entre el pasillo en donde se ubicaba el apartamento y la azotea.

Se demandó, además, a James A. Toro Sintes para compelerlo a remover un portón que instaló en el piso en donde radicaba su apartamento, el cual impedía el acceso a las escaleras del condominio.

> El derecho de uso exclusivo de la azotea, que por estipulación en contrario de su condición de elemento común, se concede a un determinado apartamento —un *penthouse* en este caso— no implica conceder al titular de dicho apartamento un derecho absoluto e irrestricto en perjuicio del bienestar y la seguridad de todos los condóminos. Impedir el acceso a la azotea a discreción del titular de dicho apartamento es contrario a la seguridad de los ocupantes del condominio en caso de un incendio, y el llamado derecho exclusivo de uso tiene que ceder en este caso al interés general de los condóminos y a la seguridad de todos. Igual solución se impone respecto a cualquier obstrucción a los medios o vías de acceso como son los pasillos, las escaleras y los ascensores.

Por lo tanto, resulta meridianamente claro que cuando se trate de una azotea no puede haber obstrucciones de dicho elemento, mucho menos la construcción de una edificación. Ésta sólo puede hacerse como parte del derecho de utilizar el vuelo que nace del techo. Únicamente cuando el techo no sea susceptible de utilizarse como azotea —por no estar dispuesto para andar sobre él y por no viabilizar accesos a través de los apartamentos residenciales— es que puede concederse a un titular el derecho de sobreelevación, si ha mediado unanimidad de los cotitulares *y* una determinación de beneficio para la comunidad.

*Segundo*, independientemente de si nuestro estado de derecho permite reconocer el derecho de sobreelevación a quien haya recibido el derecho de uso de la azotea, la prueba *incontrovertida* revela que en la reunión de 6 de agosto de 1987 *no* hubo un consentimiento *unánime* de los titulares del condominio que alegadamente ratificara la edificación de González Lamela sobre la azotea y los cambios de fachada. La minuta acredita que el quórum sólo fue de 74.6530%.

La Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291 *et seq.*, exige el voto unánime de *todos los titulares*; no basta "unanimidad de los presentes". Para cumplir con este requisito de unanimidad es menester gestionar *el voto de todos los dueños de unidades*, aun cuando no hayan comparecido a la reunión donde se haya adoptado el refe-

rido acuerdo. El Art. 38-C(b) de dicha ley, según enmendado, establece que:

> Cuando todos los titulares presentes en una reunión convocada para tomar un acuerdo que requiera unanimidad, *adoptasen dicho acuerdo,* aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a contar de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad. (Énfasis suplido.) 31 L.P.R.A. sec. 1293b-3(b).

Distinto a la conclusión mayoritaria, *los autos evidencian que no se siguió el proceso estatuido para obtener el voto del 25.347% de los titulares que no asistieron a la reunión de 6 de agosto de 1987.* Desconocemos las razones para que hoy la mayoría haya creado una controversia ficticia donde no la hay.

*Tercero,* decimos ficticia, pues durante la reunión aludida de 6 de agosto de 1987 —donde supuestamente se adoptó el *"unánime"* referido acuerdo— renunció como presidenta de la Junta la demandante Álvarez Figueredo, y el Departamento de Asuntos del Consumidor (en adelante DACO), por resolución final y firme decretó que la elección que allí hubo de la nueva Junta de Residentes fue *nula.* ¿Cómo entonces puede la mayoría estimar *unánime* un acuerdo que precisamente motivó esa renuncia y, además, una querella en DACO escasamente veintiún (21) días después?

*Y cuarto,* una lectura de la transcripción de la vista evidenciaria de la querella promovida en DACO por la propia señora Álvarez Figueredo *revela diáfanamente que no hubo la unanimidad pretendida.* Allí, tres (3) meses *después de la susodicha reunión,* bajo juramento González Lamela *admitió* la ilegalidad de su edificación sobre la azotea y *aceptó que no había conseguido unanimidad.*

LCDO. SÁNCHEZ CASO:

Y usted vela por su seguridad por razón de que en esa azotea usted tiene *una edificación que no vino originalmente en ese condominio, es correcto señor...*

SR. GONZÁLEZ:

*Sí señor.*

P. Y usted acaba de declararle a la Examinadora que la construyó hace *11 años* fue que le dijo.

R. Sí señor.

P. Hace 11 años. Usted sabe si la Ley de Propiedad Horizontal establece algo sobre los cambios de fachada, *estructuras adicionales,* cómo se debe... usted tiene conocimiento de eso o no lo sabe?

R. *Algo.*

P. Sabía que la ley *dispone que tiene que ser por unanimidad los cambios de fachada y adiciones a la estructura de ese condominio,* sabe eso?

R. *Entiendo que sí.*

P. *Y usted consiguió la unanimidad de todos los miembros titulares de ese condominio para edificar esa azotea, ese segundo piso que usted hizo en la azotea?*

R. *No señor.*

P. O sea, que entonces usted *acepta que eso es ilegal,* no?

R. Yo entiendo...

P. No niega la unanimidad y construyó... para ese tipo...

R. Entiendo que en este momento *se suscita por primera vez ante una oficina la ilegalidad.*

P. No, no, yo no le estoy preguntando si se suscita o no ante una oficina, le estoy preguntando si usted sabe, como acaba de declarar, que la ley dispone que *es por unanimidad* cuando se hacen adiciones o cambios de fachada, *yo le pregunto si entonces eso que usted dice que acaba de declarar que dice que no consiguió unanimidad de nadie, es ilegal lo que tiene usted allí. Usted acepta eso.*

R. *Está bien.*

P. Lo acepta. ¿Es así o no es así?

R. Si usted me lo dice.

P. No, no, yo le pregunto a usted, cont[é]steme usted señor González.

R. Si usted lo dice, licenciado.

P. No, yo le pregunto y usted me contesta.

R. Pues yo le contesto que como usted me lo dice yo se lo acepto.

P. No, pero es que yo no estoy pidiendo lo que yo diga, señor González. Yo quiero que usted me conteste bajo juramento a

esta distinguida Examinadora si eso es así, porque usted es el que está declarando, no soy yo.

R. *Yo le acepto, sí señor.* (Énfasis suplido.) T.E., págs. 46–47, Vista Administrativa de 12 de noviembre de 1987 en DACO.

Ante esta prueba incontrovertible y contundente, ¿cómo puede la mayoría insistir todavía en que existe controversia sobre el pretendido voto unánime?

## II

Aclarado el trasfondo procesal, fáctico y doctrinario, advertimos que los pronunciamientos mayoritarios de hoy infligen una ruda estocada a la sana normativa de *Soc. de Gananciales Manzanares v. Suárez,* supra.

Se trasluce que la médula de la decisión, ahora en reconsideración, es que nuestra jurisprudencia ha confundido los conceptos de "vuelo" y "sobreelevación", y no hemos adjudicado con propiedad los derechos que tienen los titulares sobre ambos. *Nada más lejos de la verdad.*

Nuestra doctrina ha diferenciado con claridad ambos conceptos y ha definido los derechos de los titulares a disponer del "vuelo" y la "sobreelevación". De entrada es menester reiterar que, si bien el vuelo y el derecho de "sobreelevación" son distintos, están íntimamente ligados; *es imposible conceptualizar uno sin el otro.* En *Costa Linda, Inc. v. Registrador,* 109 D.P.R. 861, 869 (1980), exploramos la interrelación entre los Arts. 11 y 18 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. secs. 1291i y 1291p, y demostramos así sus disposiciones armoniosas:

Al impedir el Art. 11 que se haga reserva del vuelo en perjuicio de su carácter comunal, no impide que la comunidad lo aproveche mediante el ejercicio de su derecho de sobreelevación en virtud del Art. 18. Ambas disposiciones, lejos de contradecirse, se complementan.

El vuelo y derecho de sobreelevación no son una y la misma cosa. El vuelo es un elemento del edificio, como lo son las escaleras, los vestíbulos, las paredes, las azoteas, las áreas de esta-

cionamiento de vehículos, etc. Estos elementos son propiedad comunal; algunos susceptibles de reserva o disposición para uso particular, otros no. El vuelo está entre estos últimos por disposición del Art. 11(a). El derecho de sobreelevación es, como dijimos en *Consejo de Titulares v. Vargas*, [101 D.P.R. 579 (1973)], en la pág. 585, el derecho de utilizar el vuelo para elevar la edificación. Y ese derecho también lo reserva nuestra Ley de Propiedad Horizontal a los condómines, como un derecho comunal, del cual pueden ellos disponer solamente por acuerdo unánime conforme al Art. 18. *No podría concebirse el derecho de sobreelevación separado del derecho al vuelo. Sería absurdo interpretar que el derecho al vuelo es elemento común, no susceptible de reserva a favor de determinado apartamiento, y que por el contrario pueda disponerse en el título constitutivo que el derecho de sobreelevación sí puede reservarse a favor de un apartamiento en particular.*

Nótese que aunque reconocimos que el vuelo y la sobreelevación no son equivalentes, tienen que entenderse de forma conjunta y que respondan a *iguales principios de política pública encarnados en la ley.* Fuimos claros entonces en que aunque el Art. 18 disponga un consentimiento unánime para levantar pisos (sobreelevar), *ello no podía implicar que se adjudicara a un particular si ese era el criterio unánime, pues no se podía atentar contra el carácter comunal de dicho derecho, cónsono con el del vuelo.*

Aún cuando propone una tesis diferente —acogida hoy por el Tribunal— en su obra *El Condominio*, San Juan, Ed. Dictum, 1992, pág. 92, expresó así el Prof. Michel J. Godreau el alcance de ese dictamen:

Si bien se *reconoce la facultad de disponer de este derecho de sobreelevación,* ello no faculta a los condóminos, *ni siquiera vía el consentimiento unánime,* a destinar este tipo de elemento común *a un particular o a un grupo* de condóminos.

## III

La opinión mayoritaria hace una apología del derecho de los titulares a utilizar el vuelo para elevar una edificación, siempre que preceda un acuerdo unánime. Estamos

de acuerdo; la ley y nuestra jurisprudencia son claros al respecto. *Lo que no podemos convenir es reconocer un derecho irrestricto de los titulares a sobreelevar una edificación.* Discrepamos de la posición de que al ejercer el derecho que confiere el Art. 18, *la única limitación* es la unanimidad. A tenor con esa visión, mediante un consentimiento unánime se podría permitir a un particular que construya sobre el techo *para su beneficio privado.*

Esa interpretación pierde de perspectiva el análisis *integral* que hiciéramos en *Soc. de Gananciales Manzanares v. Suárez,* supra, págs. 53–54:

> Por último, el lenguaje del Art. 18 de la Ley de la Propiedad Horizontal, *supra*, no puede tener el efecto de permitir lo que la ley prohíbe en su Art. 11, *supra.* Esto es, *no puede uno de los titulares del condominio, mediante el consentimiento unánime de los demás titulares*, construir una estructura cerrada sobre un elemento común general, convirtiéndolo en un elemento privativo, en clara violación a las disposiciones de la Ley de la Propiedad Horizontal y *a nuestra jurisprudencia, que prohíben que ciertos elementos comunes generales, como lo son el techo y el vuelo de un edificio, se conviertan en elementos comunes limitados o en elementos privativos.*
>
> Se ha reconocido que mediante el consentimiento unánime de los titulares se pueda disponer del derecho de utilizar el vuelo para elevar la edificación. *No obstante dicha elevación ha de ser para beneficio de toda la comunidad, ya que al ser el vuelo un elemento común general y el derecho a sobreelevación un derecho comunal reservado a la comunidad de condóminos, la utilización de los mismos no puede tener el efecto de variar su naturaleza común, ya que todo pacto contrario a su naturaleza común será nulo.* (Énfasis suplido.) *Costa Linda, Inc. v. Registrador, supra.*

Reiteramos la sabiduría y juridicidad del criterio expresado en *Costa Linda, Inc. v. Registrador,* supra, pág. 869, a los efectos de que es completamente ilógico y absurdo sostener que puede utilizarse el derecho a la sobreelevación para beneficio de un individuo, por acuerdo unánime de los titulares, y a su vez decidir que el vuelo es un elemento común general, no susceptible de la apropiación individual.

La posibilidad visualizada en la ley, de que puedan cons-

truirse nuevas plantas, no puede estimarse para beneficio *exclusivo de un solo condómino. Esa sería la única interpretación que no choca contra el espíritu y los propósitos de la ley.* Al interpretarla hemos reconocido el carácter común del derecho a la sobreelevación y, en virtud de ello, sólo hemos permitido que se le confiera a un particular[3] siempre que la obra se destine *al uso común* de los titulares.

Lamentamos sobremanera presenciar el destrozo inmisericorde de unas decisiones bien delineadas de este Tribunal que tenían como faro la lógica y defensa de los principios de política pública inmersos en la Ley de la Propiedad Horizontal. El cuidadoso perfil de esta norma, que alcanzó su cénit en *Soc. de Gananciales Manzanares v. Suárez,* supra, ha quedado destruido de un plumazo.

¿Cómo comprar la teoría de que al sobreelevar un condominio no se invade su vuelo? Si el vuelo es apenas el espacio aéreo sobre el techo, y el derecho de sobreelevación es la potestad de utilizar el vuelo para elevar la edificación; *es éste el que da sentido práctico a aquél.*

No es convincente, pues, la tesis mayoritaria de que no se ve menoscabado o invadido el vuelo de un edificio de ninguna forma. Destaca que el vuelo es inacabable e ilimitado, por lo que siempre existirá sobre el techo de la nueva edificación. *Precisamente por eso es que puede convertirse en letra muerta la prohibición respecto al vuelo.* Bajo esa teoría, siempre podría concederse el derecho de sobreelevación a un individuo, para beneficio propio, y siempre quedaría incólume el "inacabable" vuelo.

---

[3] La lógica de esta concepción se hace más patente a la luz de nuestros pronunciamientos en *Costa Linda, Inc. v. Registrador,* supra, pág. 870, cuando dijimos:

"Hacer reserva del derecho de sobreelevación a favor de un apartamento es tanto como reservarle a éste un 'solar' sobre el techo para edificar."

## IV

Recapitulando, en lo *procesal* reiteramos del todo impro-cedente el dictamen mayoritario que devuelve el caso al foro de instancia. *Hasta la saciedad hemos demostrado que no hubo el alegado voto unánime de los titulares del condo-minio convalidando los cambios ilegales efectuados al edi-ficio por González Lamela.*

En lo *sustantivo*, conforme nuestra doctrina y *Soc. de Gananciales Manzanares v. Suárez,* supra, dicho curso de acción judicial es *inconsecuente.* Independientemente de que no hubo tal unanimidad, *es un hecho no contradicho* que la edificación construida no era para el beneficio de la comunidad de titulares, sino para el de un solo titular.

Debimos denegar la reconsideración.