López Feliciano, Juez Ponente
*823 TEXTO COMPLETO DE LA SENTENCIA
Ante este Tribunal de Apelaciones comparecen Rosa Sanjurjo, Pedro Ramos, Marcelo Torchio y José Mercado (en adelante los recurrentes), como miembros electos de la Junta de Directores (en adelante la Junta) del Condominio New San Juan, solicitando la revocación de una orden emitida por el Departamento de Asuntos del Consumidor (en adelante el DACO), el 6 de agosto de 2004. Mediante la misma, el DACO se pronunció no ha lugar una moción presentada por los recurrentes en la que solicitaban se dejara sin efecto una orden suya, en la que se recogió un acuerdo transaccional logrado entre la Junta, representada en ese acto por su presidenta Teófila Ramona Santiago, y los querellantes, todos miembros del Consejo de Titulares del Condominio.
No habiendo comparecido los recurridos dentro del término reglamentario a exponer sus alegaciones, si alguna, en cuanto a los méritos del recurso instado, estamos en posición de resolver el mismo, lo que a continuación hacemos.
I
Los Hechos e Incidentes Procesales
Teófila Ramona Santiago y Juanita Sotomayor, presidenta y secretaria respectivamente, de la Junta de Directores del Condominio New San Juan, convocaron a todos los titulares de apartamentos y locales comerciales del Condominio a la celebración de una asamblea ordinaria que tendría lugar el 21 de marzo de 2004, en un salón de actividades del mismo Condominio. En la convocatoria circulada: (1) se fijó la publicación de una convocatoria a una segunda asamblea en caso de que no se lograse reunir el quorum establecido para la que se estaba convocando; (2) se advirtió sobre la alternativa de utilizar el mecanismo de los “proxys”, en caso de que algún titular que no pudiera estar presente quisiera, por medio de algún representante autorizado, emitir su voto en cuanto a los temas anunciados; (3) sé especificaron los temas a ser discutidos en la asamblea; (4) se advirtió que los titulares con cuotas atrasadas ó don deudas pendientes de pago no tendrían derecho al voto; y por último, (5) se advirtió que los acuerdos tomados en la asamblea serían válidos para los titulares presentes y ausentes.
La asamblea se celebró el 28 de marzo de 2004. Cómo parte de los asuntos tratados durante la misma se eligieron a los nuevos miembros de la Junta de Directores. La Sra. Teófila Ramona Santiago fue reelecta como presidenta, y se seleccionó a la Sra. Rosa Sanjuijo como secretaria. También se eligió a Alfredo Díaz, Marcelo Torchio, José Mercado, Pedro Ramos y Milagros García Dominici, como miembros de la Junta de Directores, aunque no se especificó los puestos que ocuparían. 
Durante la asamblea, además, se ratificó el nombramiento de la administradora, Sra. Graciela Febus; se aprobó la pavimentación del Condominio; y se aprobó la suscripción de una póliza de seguros para beneficio *824 del Condominio y sus titulares; entre otros asuntos. -
El 13 de abril de 2004, los residentes y miembros del Consejo de Titulares del Condominio Carlos Maestre Beltrán, Enrique Colón Santiago y Ivette Puchols Aviles (en adelante Maestre, Colón y Puchols) notificaron a la Junta que estaban realizando las gestiones necesarias para impugnar la asamblea celebrada. Dos días después, efectivamente, presentaron una querella ante el DACG, en contra de la Junta y del Consejo de Titulares del Condominio, en la impugnaron los acuerdos logrados en la asamblea. Alegaron que: “(1) no se eligió un tesorero; (2) no se aceptaron “proxys” notarizados; (3) se votó por el seguro, pero no por el que la Junta presentó en la asamblea; (4) se eliminó la orden de remoción de los cubículos por falta de quorum y los cuales fueron aprobados por la asamblea hace 15 años.” Lo que en definitiva requirieron los querellantes fue la invalidación de la asamblea y que se citara a la celebración de otra lo antes posible. 
El DACO notificó la celebración de una vista para dilucidar la querella presentada.
Entre tanto, otro de los titulares del Condominio, Carlos Llovet Otero (en adelante Llovet Otero), después de notificar a la Junta su intención de impugnar la asamblea, presentó el 30 de abril de 2004 ante el DACO, una querella en la que cuestionó las actuaciones de la Junta. Concretamente alegó que el poder {“proxy”) que entregó para la celebración de la asamblea del 28 de marzo de 2004 fue rechazado sin explicación alguna, razón por la cual no se contó su voto para la elección de la nueva Junta. Señaló, además, que la Junta le suspendió el servicio de agua y luz sin haberle realizado advertencia alguna de antemano, violando las disposiciones de la Ley de Propiedad Horizontal; y que durante la asamblea se aprobó un seguro para el Condominio sin que se presentara información suficiente sobre las especificaciones del mismo y sin que se presentaran otras cotizaciones. En fin, al igual que los otros querellantes, requirió se decretara la invalidación de la asamblea celebrada.
La Junta contestó las querellas presentadas. En cuanto a la querella presentada por Maestre, Colón y Puchols, se opuso a todas las alegaciones de éstos y señaló, entre otras cosas, que “los querellantes forman una claque de titulares que protestan todo, hasta lo que les beneficia en el Condominio, por razones de animosidad personal en contra de la presidenta reelecta de la Junta de Directores, Sra. Teófila Ramona Santiago.” Solicitó la desestimación de la querella, por inmeritoria y frívola, y que se le impusieran a los querellantes el pago de las costas y los honorarios de abogado.
En cuanto a la querella presentada por. Llovet Otero, la Junta alegó que el “proxy” de éste no fue considerado para voto durante a la asamblea, debido a que tenía una deuda pendiente de pago por concepto de seguro comunal, además, de que el “proxy” dejado por éste fue presentado por una persona no autorizada; sostuvo, también, la Junta que por esta misma razón le fueron suspendidos los servicios de agua y luz conforme a lo establecido en el Artículo 39 de la Ley dé Propiedad Horizontal y al Código de Seguros de Puerto Rico. Respecto a las demás alegaciones, señaló que las mismas eran vagas y carentes de fundamento. Al igual que con la otra querella, solicitó la desestimación y la imposición al querellante del pago de las costas y los honorarios de abogado.
El DACO consolidó las querellas por tratarse de una misma controversia y parte querellada, y fijó la celebración de una vista para el 28 de junio de 2004. A la misma comparecieron los querellantes Carlos M. Llovet Otero, Carlos Maestre Beltrán e Ivette Puchols Aviles, junto a su representación legal, Leda. Raquel Mercado Velázquez. Por la parte querellada comparecieron la presidenta de la Junta, Teófila Ramona Santiago; Milagros García, vocal; Graciela Rodríguez Febus, Administradora del Condominio; Francisco Yordán, perito en procedimientos parlamentarios; y el Ledo. Felipe Cirino, representante legal.
Previo a la celebración de la vista, y por orden del Oficial Examinador del DACO, las partes se reunieron con el Sr. José Maldonado y la Sra. Jannette Casiano, ambos corredores de bienes raíces y encargados del *825 seguro del Condominio, con miras a tratar de lograr un acuerdo entre las partes. Culminada la reunión, las partes llegaron al siguiente acuerdo de transacción:

“1) La Junta del Condominio New San Juan se compromete a celebrar una asamblea extraordinaria del Consejo de Titulares dentro de un término de 45 días a partir de la notificación de la resolución. La misma se convocará en o antes del transcurso de treinta días a partir: de la notificación de la resolución.

2) La Junta se compromete a convocar dicha asamblea extraordinaria a los efectos exclusivos de elegir la Junta de Directores del Condominio New San Juan en su totalidad. La Junta acordó que la asamblea extraordinaria será grabada por la secretaria de la Junta.

3) La Junta se compromete a incorporar por escrito en la convocatoria de la asamblea las normas para la presentación del proxy. Se acordó que el titular o inquilino con derecho al voto tendrá que presentar el proxy con al menos 24 horas de anticipación en la Oficina de Administración. El titular o inquilino con derecho al voto que solicite otorgar un proxy deberá llevar un original del proxy para dejarla en la Oficina de Administración y una copia para que le sea ponchada y pueda guardarla para sus propios récords. Tanto el original como la copia serán firmadas por la secretaria de la Junta o administradora y se le anotará la hora y día de recibo. Al momento de presentar el proxy, el titular o inquilino con derecho al voto deberá asegurarse que la Oficina de Administración tiene una copia de la escritura de compraventa o de arrendamiento, según sea el caso, para que la Junta pueda corroborar la firma del otorgante del proxy. Si no existe copia de la escritura en la Oficina de Administración, el titular o inquilino con derecho di voto deberá proveer copia de la escritura de compraventa o de arrendamiento dentro del mismo término de 24 horas anticipadas a la asamblea.

4) Las partes acuerdan que la Junta electa en la asamblea del 23 de marzo de 2004 continuará en funciones hasta tanto sea electa una nueva Junta y ésta tome posesión. Durante dicho tiempo, la Junta podrá darle seguimiento a los demás acuerdos de la asamblea del 23 de marzo de 2004 y convocar la asamblea extraordinaria mencionada en el acuerdo número 1.

5) Se deja en pleno vigor los restantes acuerdos logrados por el Consejo de Titulares del Condominio New San Juan en la asamblea del 23 de marzo de2004.” 

Este acuerdo transaccional fue incluido en la minuta del 2 de julio de 2004 emitida por el DACO, quien, a su vez, ordenó el estricto cumplimiento de lo acordado. La minuta y orden fue notificada el 6 de julio de 2004. Posteriormente, el DACO emitió una orden nunc pro tune en la que corrigió el título del documento en el que se emitió la orden, denominándolo como “Resolución Final”.
El 29 de julio de 2004, los recurrentes de epígrafe comparecieron por primera vez ante el DACO y presentaron una moción en la que solicitaron se dejara sin efecto la orden emitida por ser contraria a derecho. Alegaron que: (1) en las querellas presentadas no se les incluyó como miembros de la Junta de Directores en su carácter personal e individual; y (2) que no fueron notificados de las querellas presentadas, a pesar de que en las mismas se cuestionó la validez de su elección como miembros de la Junta. Aducen que el acuerdo logrado entre las partes no les obliga, ya que no fueron parte del proceso administrativo; más aún, sostienen que el acuerdo es nulo, pues no tuvieron la oportunidad de ser oídos ni de defenderse antes de que se les eliminara y despojara de sus posiciones en la Junta a la cual, alegan, fueron válidamente electos. Sostienen, además, que el DACO no tenía jurisdicción para atender las querellas, ya que no se agotó el procedimiento interno establecido en la Ley ante un Comité de Conciliación.
El 6 de agosto de 2004, notificada ese mismo día, el DACO emitió una orden en la que se pronunció no ha lugar en cuanto a lo solicitado, concluyendo que la presidenta de la Junta tenía plena capacidad para llegar a un *826 acuerdo transaccional a nombre del Consejo de Titulares y de la Junta de Directores.
ínconformes los recurrentes comparecen ante este Tribunal señalando que el DACO erró al:

“1. declarar sin lugar la moción en la que solicitaban que se dejara sin efecto la orden emitida;

2. emitir una orden en la que se afectaban derechos de terceras personas que no fueron parte en el proceso administrativo; y

3. no considerar la alegación de falta de jurisdicción, aunque no se agotó el procedimiento interno ante el Comité de Conciliación antes de acudir ante el DACO. ”

II
La Cuestión Planteada
A la luz de las alegaciones de los recurrentes, debemos determinar, en primer lugar, si la Presidenta de la Junta de Directores del Condominio New San Juan podía comparecer ante el DACO en representación de la propia Junta y del Consejo de Titulares para todos los fines legales; y, segundo, si el DACO debió determinar que no tenía jurisdicción para atender la querella preséntada por los miembros del Consejo de Titulares, o si, por el contrario, debió ordenar que se celebrara un procedimiento intemo ante un Comité de Conciliación.
III
Derecho Aplicable y Discusión de los Asuntos Planteados
A
Ley de Condominios de Puerto Rico
En nuestra jurisdicción, el Régimen de Propiedad Horizontal está reglamentado por la Ley de Condominios de Puerto Rico, Ley Núm. 103 de 5 de abril de 2003 (antes conocida como la Ley de Propiedad de Horizontal). 
Como parte de las particularidades de este régimen legal, se ha instituido en la persona de un director o de una junta de directores la administración y representación de los intereses del Consejo de Titulares de los edificios sometidos bajo el mismo. Los miembros de la Junta, con su presidente o en la alternativa el Director, han de ser electos por el Consejo de Titulares, organismo supremo del régimen que constituye el cuerpo deliberativo y normativo encargado de tomar las decisiones de trascendencia para los condominos. Consejo de Titulares v. Galerías Ponceñas, Inc., 145 D.P.R. 315, 327 (1998); Alvarez Figueredo v. González Lamela, 138 D.P.R. 958, 966 (1995); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 253 (1978). El Consejo de Titulares lo componen la totalidad de los dueños de apartamientos y locales que componen un inmueble sometido al Régimen de Propiedad Horizontal. Arce v. Caribbean Home Const., supra, pág. 252; Srio. DACO v. J. Condominos C. Martí, 121 D.P.R. 807 (1988).
La Junta de Directores será el órgano ejecutivo de la comunidad de titulares, que tendrá a su cargo, entre otros, los siguientes deberes y facultades: (1) atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen, con especial atención a lo concerniente a los elementos de uso común y los servicios generales, haciendo a estos efectos las oportunas advertencias y apercibimientos a los titulares; (2) atender los asuntos sobre conservación del inmueble, disponer las reparaciones ordinarias, y adoptar las medidas necesarias en cuanto a las reparaciones extraordinarias, en cuyo caso deberá rendir cuentas al Consejo de Titulares de forma inmediata; y (3) cumplir y hacer cumplir las disposiciones de la Ley de Propiedad Horizontal, del Reglamento y los acuerdos adoptados por el Consejo de Titulares. Ley Núm. 103, supra, *827 Art. 38-D(a), (g) e (i); 31 L.P.R.A. sec. 1293b-4 (a), (g) e (i). Véase además, Amill v. J. Dir. Cond. Pumarada, 156 D.P.R._ (2002), 2002 J.T.S. 44; Consejo Titulares v. Galenas Ponceñas, Inc., supra.
A tenor con lo dispuesto en la referida legislación, el Consejo de Titulares y la Junta de Directores son organismos distintos. La personalidad jurídica la ostenta el Consejo de Titulares; ésta le capacita para ejercer derechos, tomar determinaciones e incurrir en obligaciones á nombre de los titulares, incluso por encima de la voluntad individual de una minoría de sus miembros, siempre y cuando actúe confórme a la ley y dentro del ámbito de sus finalidades. Por otro lado, se reconoce entre las atribuciones conferidas por ley a la Junta de Directores la facultad para acudir a los tribunales en representación de la comunidad de titulares con el fin de exigir el cumplimiento de las disposiciones de la Ley de Propiedad Horizontal respecto a los asuntos que afectan a aquélla y con relación a los cuales ésta decide actuar conforme la capacidad jurídica que se le reconoce para ello. Arce v. Caribbean Home Const. Corp., supra, págs. 251-254.
Sobre este particular, la Ley de Condominios, supra, en su artículo 38-E, sobre la controversia de epígrafe dispone lo siguiente:

"§ I293b-4A. Consejo de Titulares-Presidente

El Presidente representará en juicio y fuera de él a la comunidad en los asuntos que la afecten y presidirá las reuniones del Consejo. Comparecerá a nombre del condominio para otorgar las escrituras y demás documentos en los que el Consejo de Titulares sea parte.

Cuando se trate de acciones oara hacer cumplir ésta o cualquier otra lev aplicable, el Reglamento del Condominio o los acuerdos del Consejo de Titulares, o cuando el Consejo de Titulares o ¡a Junta de Directores, en representación de éste, deba comvarecer en pleito como demandado o querellado, el Presidente vodrá comparecer a nombre de dichos órmnos v presentar las acciones v defensas que estime procedentes, seleccionando la representación lesal qué estime conveniente, previa consulta a la Junta. De las acciones tomadas, deberá notificar a los titulares a la brevedad posible, convocando al Consejo para adoptar los acuerdos que se estimen convenientes.

Toda transacción judicial o extrajudicial que exceda de cinco mil (5,000) dólares deberá obtener la aprobación del Consejo de Titulares. En los condominios comerciales o profesionales, el Reglamento podrá fijar otra suma. En todo caso, se presumirá aue el Presidente del condominio cuenta con la autorización del Consejo de Titulares para comparecer a nombre de éste en los foros pertinentes.” 31 L.P.R.A. sec. 1293b-4A (Subrayado nuestro)
Las múltiples situaciones que pueden surgir como parte de la administración de un edificio, que esté sujeto al régimen de propiedad horizontal, requiere que, de ordinario, la Junta de Directores tenga a su disposición aquellos mecanismos que hagan viable el cabal cumplimiento de sus deberes. Acudir al foro judicial para lograr el ejercicio efectivo de las facultades conferidas expresamente por ley, y que dicho ejercicio no esté condicionado por el estatuto a la intervención -del Consejó de Titulares, evidentemente es uno de esos mecanismos. En vista de ello, el Tribunal Supremo de Puerto Rico ha resuelto que el Director, o en su defecto el Presidente de la Junta de Directores, no necesita obtener el consentimiento del Consejo de Titulares para acudir a los tribunales con el propósito de lograr el efectivo cumplimiento de las facultades que la Ley de Propiedad Horizontal le confiere de forma expresa y cuyo cumpliíniento no fue condicionado por la Asamblea Legislativa a intervención alguna del Consejo de Titulares. En éste tipo de acciones, el Director o el Presidente de la Junta de Directores no necesitan la intervención oportuna del Consejo de Titulares para que su gestión sea válida. Consejo Titulares v. Galerías Ponceñas, Inc., supra.
No obstante, dada la diversidad de situaciones que pudieran ameritar recurrir al cauce judicial para proteger *828 los intereses del Consejo de Titulares, así como la premura con la que en ocasiones se debe actuar, opera una presunción rebatible a favor del Presidente de la Junta de Directores en términos de que se encuentra autorizado para acudir a los tribunales en representación del Consejo de Titulares. Si la parte adversa logra controvertir tal presunción con fundamentos, compete al Presidente o a la Junta de Directores demostrar al tribunal que posee la autorización necesaria en este tipo de acciones, ya sea demostrando que el Consejo de Titulares prestó previamente su consentimiento u obteniendo la ratificación de su actuación dentro de un período de tiempo razonable. Véanse: Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Consejo Titulares v. Galerías Ponceñas, Inc., supra; Ríos Rosario v. Vidal Ramos, 134 D.P.R. 3 (1993).
Debe destacarse el hecho de que la finalidad de esta norma es brindar flexibilidad a la gestión directiva del cuerpo administrativo de los condominios, a la vez que se minimiza la posibilidad de actuaciones arbitrarias de su parte.
De otra parte, el Artículo 42 de la referida legislación, establece que:

"§ 1293f Decisiones judiciales; impugnación de acuerdos y determinaciones del Consejo, término

Los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que someté el inmueble al régimen que establece esta Ley, durante el período de administración que contempla el Artículo 36-A, del Presidente v del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, serán impugnables ante el Tribunal de primera instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia el Artículo 36. Las impugnaciones por los titulares de apartamientos destinados a viviendas se presentarán ante el Departamento de Asuntos del Consumidor....” 31 L.P.R.A. sec. 1293f (Subrayado nuestro)
En primer lugar, debemos aclarar, que este articulado, que citan en su escrito los recurrentes, rige en las actuaciones acaecidas “durante el período de administración que contempla el Artículo 36-A, ...”, no en situaciones como la del caso de autos. El período a que se hace referencia en el mencionado artículo es al de administración interina, que es el período durante el cual la administración del Condominio está en manos del desarrollador. 
En segundo término, pero no menos importante, precisa que señalemos que este artículo sólo será aplicable en situaciones concernientes a la “administración de inmuebles que no comprendan apartamientos destinados a la vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamento dedicado a la vivienda”.
Queda diáfanamente establecido que las situaciones antes descritas no son de aplicación al caso de autos, ya que no se acredita que el Condominio New San Juan esté bajo administración interina, ni que sea un condominio de apartamientos no destinado a la vivienda o de titulares de apartamientos no residenciales; por el contrario, todos los querellantes son residentes del Condominio y miembros del Consejo de Titulares del mismo.
En el presente caso, lo que se impugnó de parte de los querellantes ante el DACO fueron las decisiones del Consejo de Titulares tomadas en la asamblea celebrada el 28 de marzo de 2004, entre las cuales se encontraba la validez de la elección de los miembros de la Junta de Directores. El artículo 38-E, antes citado, establece que el presidente de la Junta de Directores, en este caso, la presidenta Teófila Ramona Santiago, puede comparecer *829 ante cualquier foro, tanto a nombre de la Junta como a nombre del Consejo de Titulares, y presentar allí las acciones y defensas que estime procedentes.
Los recurrentes, para sostener su planteamiento de que “cuando lo que se cuestiona es la posición de alguno o de todos los miembros de la Junta, la parte indispensable es el miembro o los miembros y no la Junta como entidad’ citan, convenientemente, una porción de lo resuelto en el caso Cond. Professional S.J. Centre v. PRF, Inc., 133 D.P.R. 488 (1993), en la que se afirma que la Ley de Condominios reconoce el derecho a los titulares a impugnar los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuación del director o de la Junta de Directores. No obstante, debemos reiterar que el Artículo 42, base de la alegación anterior, no es de aplicación a los hechos del presente caso. El artículo aplicable al caso de epígrafe es el Artículo 38-E, supra, de la Ley de Condominios.
Indudablemente, el presidente de la Junta es la persona investida por la Ley de Condominios con la facultad de comparecer a un procedimiento judicial para hacer cumplir lo estatuido, sin que para ello medie previa autorización del Consejo de Titulares. Esto añadido al hecho de que es la Junta la entidad designada para hacer valer la Ley, el Reglamento y los acuerdos adoptados por el Consejo. Aunque la legislación no contempla el procedimiento o forma en que ha de ejercerse dicha potestad, es necesario enfatizar que ha sido la práctica en nuestro ordenamiento concederle mayor agilidad a la Junta de Directores, y en particular a su presidente, para ejercer aquellas facultades que le han sido expresamente concedidas por la Ley. Consejo Tit. v. Galerías Ponceñas, Inc., supra, págs. 330-331, 333.
Establecida la capacidad de la presidenta para comparecer ante el DACO en representación de la Junta de Directores y del Consejo de Titulares, y para presentar allí las acciones y defensas que estimara convenientes, no habiendo sido derrotada la presunción que le cobija respecto a este particular por parte de los recurrentes, concluimos que válidamente la presidenta podía tomar la decisión que tomó de negociar un acuerdo de transacción con los querellantes ante el DACO, que dicho sea de paso no afecta derecho alguno de los recurrentes quienes para todos los efectos legales todavía no eran parte de la Junta, ya que precisamente se impugnó la celebración de la asamblea en la que fueron elegidos.
Respecto al procedimiento interno a que hacen referencia los recurrentes, el mismo no es de aplicación al presente caso. Refiérase a lo establecido anteriormente en cuanto a la aplicabilidad del artículo 42 de la Ley de Condominios, supra.
IV
Disposición del Recurso
Por los fundamentos antes expuestos, se confirma la resolución dictada el 6 de agosto de 2004 por el Departamento de Asuntos del Consumidor. En consecuencia, se determina que no se rebatió la presunción de que la presidenta de la Junta de Directores de Condominio New San Juan podía representar tanto a la Junta como al Consejo de Titulares ante dicho foro administrativo; se determina, además, que el acuerdo transaccional pactado que, entre otras cosas, obliga a la celebración de una nueva asamblea, debe cumplirse en todas sus partes.
Notifíquese.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
*830 ESCOLIOS 2005 DTA 20
1. Un proxy es un “poder” que le confiere una persona a otra para que vote en su representación. Diccionario de la Lengua Española, 21ra. Ed., Madrid, 1992.
2. Apéndice de los recurrentes, pág. 5.
3. Aunque no se desprende con claridad de la minuta de la asamblea, entendemos que el seguro cuya suscripción se proponía, era American International Insurance Co. Véase, apéndice de los recurrentes, pág. 5.
4. Apéndice de los recurrentes, págs. 13-14.
5. Por error o inadvertencia en el acuerdo transaccional, se dice que la asamblea se celebró el 23 de marzo de 2004 cuando debió decirse 28 de marzo de 2004, fecha en que se celebró la asamblea según consta en la minuta preparada por la secretaria de la Junta, y en los demás documentos que aparecen en el expediente ante nuestra consideración.
6. Ley Núm. 104 de 25 de junio de 1958.
7. MJ. Godreau, La Nueva Ley de Condominios: Guía Básica para Entender el Régimen de Propiedad Horizontal según la Ley 103 del 5 de abril de 2003, San Juan, Ed. Diptum,-2003, p.33.