El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
El Consejo de Titulares del condominio La Torre Mira- *318 mar, representado por su Junta de Directores, solicita que revoquemos el dictamen mediante el cual el Tribunal de Apelaciones determinó que ciertas construcciones en el te-cho y en la azotea del edificio, realizadas por titulares an-teriores de un “penthouse”, no podían ser removidas. Esto, debido a que ya había transcurrido el periodo prescriptivo para impugnar tales acciones, según lo dispone el Art. 42(c) de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1293f) (Ley de Condominios y Art. 42(c)).
Como asunto de umbral, este recurso permite expresar-nos en torno al alcance y los efectos jurídicos de la inacción y del incumplimiento con las responsabilidades impuestas a un Consejo de Titulares y una Junta de Directores en la Ley de Condominios. En ese contexto, debemos determinar si ello impide que un elemento común general alterado por mi titular sea restituido a su estado original. Conjunta-mente, es necesario analizar si a la controversia de autos le aplica el Art. 42(c), según lo dispuesto en Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485 (2011). A su vez, debemos resolver si el incumplimiento con las obligaciones impues-tas al Consejo de Titulares y a la Junta de Directores en relación a un inmueble sometido al régimen de propiedad horizontal, da base a la aplicación de un remedio en equidad.
Los antecedentes fácticos que dan origen a la controver-sia de autos son relativamente sencillos. Así pues, pasamos a reseñarlos para atender apropiadamente el recurso que nos ocupa.
I
El 13 de marzo de 2009, el Consejo de Titulares (Consejo o peticionarios) del condominio La Torre Miramar(1) (Con- *319 dominio o La Torre) presentó una demanda contra el dueño del apartamento PH-A, el Sr. Edwin Ramos Vázquez (recu-rrido o señor Ramos Vázquez), por violar la Ley de Condominios. (2)
El apartamento del recurrido es uno de los tres “penthouses” del Condominio, los cuales constan de dos niveles y ocupan los pisos 11 y 12 de la estructura. En esencia, el Consejo alegó en su demanda que el señor Ramos Vázquez se apropió ilegalmente del área de la azotea y del techo del Condominio que queda justo sobre su apartamento. Argüyó que el recurrido hizo un hueco en el techo del segundo piso de su propiedad —que es la azotea del Condominio— y que accede a esta por una escalera que hay en el interior del apartamento. Adujo, además, que el señor Ramos Vázquez mantiene sobre el hueco perforado una estructura perma-nente con puerta y que está construyendo un jacuzzi de hormigón y bloques de cemento con su correspondiente co-nexión de servicio eléctrico y sistema para el suministro de agua. El Consejo también se quejó de que el recurrido co-locó tiestos con plantas, losetas de piso y barandas de tubos de metal galvanizados alrededor del borde de la azotea, y de que permite que uno o varios de sus perros tengan ac-ceso a ese elemento común para realizar sus necesidades. Por ello, sostuvo que el señor Ramos Vázquez se apropió ilegalmente de la azotea y del techo del Condominio, con-virtiendo un elemento común general en un elemento de uso exclusivo.
Así pues, el Consejo solicitó al Tribunal de Primera Ins-tancia que emitiera una orden de injunction y ordenara al recurrido a cerrar el hueco que mantiene en el techo del apartamento, a eliminar cualquier estructura, construc-ción, baranda, losetas de piso, conexiones de agua y elec- *320 tricidad, tiestos y plantas, y a remover los perros que man-tiene en la azotea. Ello, para que las superficies afectadas del Condominio fueran restituidas a su estado original.
Por su parte, el 28 de abril de 2009, el recurrido pre-sentó una moción de desestimación ante el foro primario. En ella expresó que el área en controversia no era un techo sino una azotea, la cual es susceptible de uso limitado. Sos-tuvo que la intención del desarrollador fue designar la azo-tea como elemento común limitado. Incluso, adujo que la Ley de Condominios establece un periodo prescriptivo de dos años para impugnar este tipo de acciones. Art. 42(c) de la Ley de Condominios. Por consiguiente, en vista de que él adquirió su apartamento hace diez años con las modifica-ciones objetadas(3) (excepto la construcción del jacuzzi), sostuvo que la acción interdictal estaba prescrita.
El foro de instancia ordenó a las partes auscultar aque-llos hechos y asuntos que pudieran ser objeto de estipulación. A tales efectos, el 29 de julio de 2009, las par-tes presentaron sus estipulaciones de hechos. Por la impor-tancia que tienen para la resolución del caso, transcribi-mos las de mayor relevancia:
A. El Condominio la Torre de Miramar (en lo sucesivo “La Torre”) es un edificio de varios pisos principalmente con fines residenciales.
K. A pesar de que la escritura matriz no menciona el concepto azotea, ello es realmente lo que existe en la parte superior de La Torre por cuanto existe acceso mediante una escalera. Dicha azotea es un área sobre [la] cuál se puede caminar.
L. En la azotea, existen filtros o respiraderos, el cuarto de má quina de los ascensores, la cisterna de agua de La Torre, por lo que el personal contratado por el Condominio accede hasta allí para brindarles el mantenimiento debido. *321 O. En el momento en que el Sr. Edwin Ramos Vázquez adqui-rió el Penthouse A, es decir hace más de diez (10) años atrás [sic], determinó adquirirlo en las condiciones en las que se en-contraba (“as is”). De la escritura otorgada se desprende que el área del techo sobre el segundo nivel del apartamento no for-maba parte del inmueble, no obstante, sobre todo el resto del inmueble adquirido en esas condiciones ha realizado actos de dominio en calidad de dueño del inmueble.
P. ... El techo del piso 12 no refleja en los planos hueco alguno ni escalera en espiral que le brinde acceso a la azotea de La Torre del interior del piso 12. Uno de los anteriores dueños del apartamento Penthouse A realizó un hueco en el techo del piso 12 que le da acceso a la azotea de La Torre y colocó y lo instaló una escalera en espiral. De igual forma, uno de los dueños anteriores, sobre el referido hueco y ya propiamente en la azo-tea construyó una estructura de concreto techada que cubre la mencionada escalera (“tipo casita”) y que tiene una puerta con cerradura que impide que terceros ganen acceso al aparta-mento del actual dueño, Sr. Edwin Ramos Vázquez, desde la azotea de La Torre.
Q. En el área de la azotea, uno de los anteriores dueños del Penthouse A, instaló losetas, colocó barandas que cubren la parte que está inmediatamente sobre el apartamento propie-dad del señor Ramos Vázquez. De igual forma, colocó tiestos de diferentes tamaños y que tienen diferentes plantas, figuras tipo esculturas.
R. No existe evidencia de que todos los cambios mencionados en los párrafos P, Q, [S y T\ de este documento formaran parte del diseño original.
S. Uno de los pasados dueños del apartamento Penthouse A instaló en la azotea y para beneficio del apartamento una an-tena para recibir señal de televisión, un calentador de agua eléctrico con sus correspondientes paneles solares, conexiones eléctricas, de agua, luces, lámparas. A finales del año 1999, el señor Ramos Vázquez colocó un juego de mesa y cuatro (4) sillas tipo terraza en la azotea. Más recientemente, el señor Ramos comenzó en la azotea la construcción de un jacuzzi en bloques de hormigón para la que le extendió una línea eléctrica de la conexión pre existente y realizó la instalación de tuberías para dotar al jacuzzi de agua.
U. Ninguno de los pasados miembros de la Junta de Condomi-nos o residente alguno ha realizado acercamientos en los diez (10) años que lleva como residente en La Torre el señor Ramos *322 Vázquez relacionado a los cambios realizados por los pasados dueños del Penthouse A. Los mismos pre existían a la llegada del señor Ramos Vázquez, así se corroboró el día de la segunda inspección ocular al expresarlo la representante de la Junta de Condominos de La Torre, quien responde al nombre de “Ana Leticia”.
V. Que se tenga conocimiento de que no existe aprobación del Consejo de Titulares de La Torre para que los pasados dueños realizaran los cambios objeto de la demanda de epígrafe ni a los cambios que ha realizado el señor Ramos Vázquez. La de-claración jurada que acompaña la demanda y fuera suscrita por la [sic] actual Presidente del Consejo de Titulares dispone [e]l Consejo de Titulares del Condominio La Torre de Miramar jamás ha autorizado al Sr. Edwin Ramos Vázquez a que se aproveche de forma exclusiva del techo y de la azotea del Con-dominio que son elementos comunes generales, ni a que man-tenga y se aproveche de las modificaciones hechas por anterio-res dueños de su apartamento. (Énfasis nuestro y en el original). Apéndice del Certiorari, págs. 80-84.
Posteriormente, el 24 de mayo de 2010, el foro primario dictó una sentencia parcial en la que declaró “ha lugar” la solicitud de injuction y ordenó al señor Ramos Vázquez que detuviera toda construcción que estuviera realizando en la azotea del Condominio. Le ordenó, además, demoler y reti-rar cualquier alteración o modificación existente en el apartamento contraria a lo resuelto en la sentencia par-cial, y que restaurara la azotea del Condominio a su estado original.
Inconforme con la decisión del foro de instancia, el recu-rrido acudió al Tribunal de Apelaciones. Así pues, me-diante su dictamen emitido el 23 de agosto de 2010, el foro a quo revocó en parte la sentencia parcial emitida por el Tribunal de Primera Instancia. En síntesis, determinó que las modificaciones efectuadas por los dueños anteriores del apartamento PH-A —hace más de diez años y sin la auto-rización del Consejo— eran cambios que según la Ley de Condominios se podían realizar mediante el consenti-miento unánime de los titulares. Consecuentemente, resol-vió que el Art. 42(c) aplica al caso de autos y que, por ende, la reclamación del peticionario en cuanto a las construccio- *323 nes realizadas por los pasados titulares estaba prescrita. Empero, concluyó que la acción persistía en torno a la cons-trucción del Jacuzzi, porque cuando se presentó la de-manda de injuction aún se construía y no se había obtenido el consentimiento del Consejo para esta obra.
Insatisfecho con ese dictamen, el 3 de noviembre de 2010, el Consejo acudió ante nos mediante un recurso de certiorari. En síntesis, alegó que el Tribunal de Apelacio-nes erró al concluir que la causa de acción del Consejo que perseguía eliminar la perforación en el techo del Condomi-nio, estaba prescrita en conformidad con el Art. 42(c). Esto, pues el techo es un elemento común general necesario que no admite que se transfiera su control o posesión, y que cualquier pacto en contrario sería nulo.(4) Arguye que el foro a quo incidió al concluir que la causa de acción del Consejo para eliminar la estructura en bloques y hormigón con techo y puerta construidos por los dueños anteriores del apartamento PH-A, sobre el hueco del techo, estaba prescrita en conformidad con el citado Art. 42(c). Ello, pues tal construcción invade el vuelo del edificio y constituye el ejercicio del derecho de sobrelevación sin el consentimiento unánime de los condominos.(5) De igual forma, el Consejo *324 sostiene que el foro apelativo intermedio erró al señalar que la causa de acción en relación con las losetas y baran-das instaladas en la azotea, que se encuentran sobre el apartamento PH-A, está prescrita en conformidad con el Art. 42(c).(6)
El 1 de abril de 2011 expedimos el certiorari solicitado. En cumplimiento con la orden de este Tribunal, ambas par-tes presentaron sus alegatos. Contando con el beneficio de su comparecencia, pasamos a resolver.
II
A. Principios promulgados por la Ley de Condominios
Uno de los principios rectores en nuestro régimen de propiedad horizontal es garantizar a cada titular el pleno disfrute de su propiedad. M.J. Godreau, La Nueva Ley de Condominios San Juan, Ed. Dictum, 2003, pág. 19. Por eso la Ley de Condominios dispone que “[e]l titular de un apartamiento sometido al régimen de propiedad horizontal tiene el derecho al pleno disfrute de su apartamiento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de su[s] respectivas propiedades”. Art. 1-A de la Ley Núm. 103-2003 (31 L.P.R.A. see. 1991). De igual forma, este precepto establece que tanto el Consejo, como la Junta de Directores, tienen el deber ineludible de orientar y dirigir sus *325 acciones de administración sobre los elementos y áreas co-munes del edificio hacia el disfrute de la propiedad privada. Análogamente, esta responsabilidad se asigna al propietario del apartamento en el régimen. Ello, pues el ejercicio del dominio en una propiedad sometida a la Ley de Condominios “está limitado por los derechos de los de-más condominos y ... el derecho de propiedad sobre su apartamiento tiene que ejercerse dentro del marco de con-vivencia y el respeto al derecho ajeno”. íd.
Igualmente, en aras de preservar el disfrute de la propiedad privada y, a su vez, lograr la sana convivencia de los condominos, la ley exige que el ejercicio de los derechos en el condominio se oriente por los principios de la buena fe, la prohibición de ir contra los propios actos y la prohibición del abuso del derecho. Art. 1-A, supra. De esta forma, en la Ley de Condominios se prohíbe el comportamiento caprichoso de los titulares y aquellas acciones que afectan la estabilidad del régimen. En ese marco de referencia, la ley incluye disposiciones que recogen estos principios.
Así pues, se presume que tanto las acciones de los titulares como las del Consejo deben regirse por la buena fe, el principio del no abuso del derecho y el principio de no ir en contra de los actos propios. Cónsono con lo anterior, el Art. 15 (31 L.P.R.A. sec. 1291m) preceptúa las reglas que cada titular debe observar en la utilización de su apartamento y de los elementos comunes del condominio. Este precepto establece categóricamente, entre otras exigencias y prohibiciones, que todo titular tiene el deber de cumplir estrictamente con todas las disposiciones de administración que se consignan en la Ley de Condominios, en la escritura o en el reglamento del condominio. La infracción de estos principios o de las reglas enumeradas en ese artículo dará lugar “al ejercicio de la acción de daños y perjuicios por el titular u ocupante afectado, además de cualquier *326 otra acción que corresponda en derecho, incluidos los inter-dictos ... y cualquier otro remedio en equidad”.
Igualmente debemos indicar que una característica fundamental que se establece en la exposición de motivos de la Ley de Condominios es que sean los titulares quienes tengan el control último sobre las decisiones del inmueble.(7) De esa forma, este precepto dispone que el Consejo de Titulares está integrado por todos los titulares y “constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal”. Art. 38 (31 L.P.R.A. sec. 1293b). Este goza de personalidad jurídica y es por medio de su existencia que se hace viable la administración de las áreas comunes del inmueble por todos los titulares. Así, hemos establecido que la finalidad del Consejo de Titulares “consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros, o sea, el de los titulares frente a la comunidad y a terceros”. Bravman, González v. Consejo Titulares, 183 D.P.R. 827, 825 (2011). De esa forma, “sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio”. Art. 38, supra. Debemos puntualizar, que en el cumplimiento de sus obligaciones, la conducta del Consejo de Titulares “debe responder al fin último de la Ley de Condominios de Viabilizar la propiedad particular y privada del apartamiento’ ”. (Citas omitidas). Bravman, González v. Consejo Titulares, supra, pág. 853. A esos efectos, el Art. 38(k), ex-presa que el Consejo de Titulares deberá “[intervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas nece- *327 sarias y convenientes para el mejor servicio común”. (Énfa-sis nuestro). 31 L.P.R.A. sec. 1293b.
Acorde con lo intimado, la ley establece que la Junta de Directores, que constituye el órgano ejecutivo de la comunidad de titulares, tendrá el deber de “[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares”. (Énfasis nuestro). 31 L.RR.A. 1293b-4. Asimismo, se le impone la obligación de “[c\umplir y hacer cumplir las disposiciones de [la Ley de Condominios], del reglamento y los acuerdos del Consejo de Titulares.” (Énfasis nuestro). 31 L.P.R.A. sec. 1293b-4.
Como podemos apreciar, la Ley de Condominios asigna responsabilidades a todos los componentes del régimen de propiedad horizontal, entiéndase titulares, Consejo de Ti-tulares y su Junta. En ese sentido, les exige obrar según los principios de buena fe y equidad, ya sea en el quehacer administrativo o privado. Ello para viabilizar el máximo disfrute de la propiedad privada y el aprovechamiento del uso y disfrute de los elementos que componen el régimen. Bravman, González v. Consejo Titulares, supra.
B. Las acciones de impugnación según el Art. 42(c)
Como es sabido, el Art. 42 de la Ley de Condominios reglamenta la impugnación de los acuerdos y las determinaciones del Consejo, así como las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores. El inciso (a) del citado precepto promueve la reducción del número de querellas ante el foro administrativo al disponer un procedimiento inicial ante los organismos internos del condominio. Pereira Suárez v. Jta. Dir. Cond., supra; Godreau, op. cit., pág. 40.
El Art. 42(c) establece un término prescriptivo de dos años para la impugnación de los acuerdos u omisiones *328 de la Junta de Directores o del Consejo de Titulares por razón de violación a la Ley de Condominios, al reglamento de la comunidad o a la escritura matriz. Específicamente, el lenguaje del citado precepto dispone:
(c) La acción de impugnación de acuerdos, acciones u omi-siones de la Junta de Directores, del Consejo de Titulares, con excepción de los realizados por el titular que somete el inmue-ble al régimen, que violen las disposiciones de este capítulo, de la escritura matriz o del Reglamento del condominio, prescri-birá a los dos (2) años de haberse notificado el acuerdo, to-mado la acción o de conocerse la omisión. Para los titulares que impugnen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente.
Al ejercitar la acción de impugnación de acuerdos del Con-sejo de Titulares, el titular deberá acreditar que estuvo pre-sente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo au-sente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. (Enfasis nuestro). 31 L.P.R.A. sec. 1293f(c).
Al interpretar la intención legislativa del Art. 42(c), en Pereira Suárez v. Jta. Dir. Cond., supra, analizamos que el propósito de la imposición de un término prescriptivo para presentar las impugnaciones de acciones u omisiones por violaciones a la Ley de Condominios o al reglamento res-ponde a la necesidad de: estabilizar el régimen de propie-dad horizontal y evitar el proceder arbitrario de los titula-res contra los acuerdos, omisiones y acciones realizadas. A esos fines, expresamos que la Asamblea Legislativa quiso conformar el referido precepto a los citados principios de buena fe, la prohibición de ir contra los actos propios y la prohibición del abuso del Derecho. De esa forma, en Pereira Suárez v. Jta. Dir. Cond., supra, observamos que las enmiendas introducidas al Art. 42 tienen el propósito de poner un freno “al afán obstruccionista de algunos titula-res que, por intereses particulares, ponen en juego la esta-bilidad de toda una comunidad”. Pereira Suárez v. Jta. Dir. *329 Cond., supra, pág. 502. En aquel entonces, citando al pro-fesor Godreau, enfatizamos que:
“¿[S]i por largos años nadie ha tomado acción ante determi-nado cambio evidente, no es de presumir que a la larga todos han aceptado la alteración? No se trata aquí de convalidar por el transcurso del tiempo actuaciones o acuerdos que la ley no permite, no si quiera mediando consentimiento unánime. Este nuevo término de prescripción de las acciones ...le impone a los titulares la responsabilidad de actuar diligentemente en la defensa de su propiedad, porque de lo contrario se interpretará que consintieron al cambio.r Godreau, La Nueva Ley de Condo-minios, op. cit., pág. 30”. (Énfasis nuestro). íd., pág. 500.
Es preciso recordar que, con anterioridad al estableci-miento de un periodo prescriptivo, se admitía la formula-ción de querellas, luego de haber transcurrido décadas de establecido el cambio o la violación impugnada. Tal proce-der no solo propiciaba la inestabilidad del régimen y la inseguridad, sino que alteraba también el balance de la convivencia en comunidad.(8) Así pues, durante el proceso legislativo que emergió a raíz de la presentación del Pro-yecto del Senado 1425, las comisiones participantes toma-ron en consideración el factor de que ni en la vía adminis-trativa, ni en los pronunciamientos de esta Curia, “se ha reconocido la importancia que merece en el régimen el principio del reclamo diligente de derechos, encarnado en la figura de incuria y en las doctrinas de consentimiento tácito y del impedimento de ir en contra de los propios actos”. Pereira Suárez v. Jta. Dir. Cond., supra, pág. 501. Es por ello que, tras la aprobación de la Ley de Condomi-nios, el legislador quiso poner en vigor estas doctrinas. De esa forma, el establecimiento del término de prescripción de dos años vendría a combatir estos males y evitaría la situación de que los nuevos adquirentes impugnen los cam-bios que titulares anteriores habían aceptado tácitamente, *330 menoscabando el ambiente de convivencia que puede ha-ber existido durante años en el condominio. Pereira Suárez v. Jta. Dir. Cond., supra, pág. 500, citando al Informe en torno al P. del S. 1425, Comisión de Desarrollo Urbano y Vivienda de la Cámara de Representantes, 3 de marzo de 2003.
Ahora bien, es necesario destacar que en Pereira Suárez v. Jta. Dir. Cond., supra, el Presidente de la Junta de Directores del condominio en cuestión suscribió un contrato con una compañía para la operación de instalaciones de telecomunicaciones en la azotea del edificio. El contrato concedía el uso exclusivo e ilimitado de ese elemento común y, según se verificó en el expediente del caso, el Presidente no contó con la aprobación del Consejo de Titulares para otorgar el contrato. Concluimos que el contrato otorgado por el Presidente de la Junta con la compañía era un acuerdo que la ley permitía realizar. Por lo tanto, le aplicaba el periodo prescriptivo del Art. 42(c). Específicamente, en esa ocasión expresamos lo siguiente:
El legislador fue enfático cuando aclaró que siempre que el acuerdo esté permitido por ley, se podrá cuestionar en el plazo establecido en el Art. 42(c). Estamos ante una acción anulable, no nula de por sí como serían los casos que la Junta de Direc-tores o el Consejo de Titulares realizan un acto que veda la ley.
Ahora bien, el titular que desee impugnar un acuerdo de-berá ser diligente en procurar su derecho. Tendrá la obligación de ejercerlo o reclamarlo dentro del término de dos años que dispone el Art. 42(c), cuando se trate de acuerdos permitidos por la ley. Para ello es irrelevante si se requiere unanimidad o no. Sin embargo, cuando se trate de cuestionar acuerdos o acciones que la ley prohíbe totalmente no habrá obstáculos prescriptivos para ejercer la acción de impugnación, indepen-dientemente del favor de los titulares. Pereira Suárez v. Jta. Dir. Cond., supra, pág. 508.
Queda claro que allí distinguimos que el periodo pres-criptivo para impugnar las acciones, acuerdos u omisiones no aplica cuando se trata de actos tajantemente prohibidos por la Ley de Condominios. A esos efectos, aclaramos que *331 “los actos contrarios a la ley son nulos y se podrán cuestio-nar en cualquier momento. Por el contrario, las impugna-ciones de las acciones o acuerdos que la ley faculta a los titulares a realizar, se tendrán que disputar dentro del tér-mino ordenado”. Pereira Suárez v. Jta. Dir. Cond., supra, pág. 504. Así también, enfatizamos que ese periodo de prescripción no cerraría las puertas a la posibilidad de ins-tar acciones de impugnación. Más bien, aclaramos que es-tas debían ser presentadas en el término de dos años. De esa forma, concluimos que las acciones que realizó el Pre-sidente de la Junta de Directores del Condominio, al no estar prohibidas en la ley, estaban sometidas al periodo de impugnación de dos años.
Ahora bien, es preciso acentuar que en Pereira Suárez v. Jta. Dir. Cond., supra, aplicamos el Art. 42(c) porque se trataba de la acción de impugnación de un titular contra un acuerdo realizado por el presidente de la Junta de Directores de un condominio. Sin embargo, no resolvimos allí —ya que no estaba ante nuestra consideración por los he-chos particulares de ese caso— si el término prescriptivo dispuesto en el Art. 42(c) está conceptualizado para ser uti-lizado por el Consejo de Titulares o la Junta de Directores cuando quieren impugnar las acciones realizadas por un titular; en específico, acciones legales, pero no autorizadas conforme a los parámetros establecidos en la ley.
Precisamente, esa es una de las controversias que debe-mos atender para dilucidar el caso de autos. Veamos.
C. Acciones, acuerdos u omisiones a las que le aplica el periodo prescriptivo según su ejecutor
El Proyecto del Senado 1425, según presentado el 11 de abril de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordi-naria, pág. 48, proponía inicialmente el lenguaje siguiente para el Art. 42(c):
(c) La acción de impugnación de acuerdos, acciones u omisio-nes de la Junta de Directores, del Consejo de Titulares o de *332 cualquier titular, que violen las disposiciones de esta Ley, de la escritura matriz o del Reglamento del condominio, caducará a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión. Para los titulares que impug-nen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente. (Enfasis nuestro).
Vemos que originalmente se establecía un periodo de caducidad. Así también, inicialmente se disponía que este periodo aplicaría al ejercicio de las impugnaciones de ac-ciones, omisiones y acuerdos efectuados, tanto por la Junta de Directores y el Consejo de Titulares, como las acciones realizadas por los titulares que violaban la ley, la escritura matriz, y el reglamento del inmueble.(9)
Empero, una vez la Cámara de Representantes consi-deró el proyecto, fue devuelto al Senado con enmiendas al texto propuesto. Particularmente, en lo que concierne al Art. 42(c), el legislador decidió que establecer un periodo de caducidad era demasiado oneroso. Por tal razón, se optó por el establecimiento de un periodo de prescripción. De igual forma, debemos interpretar que la intención expresa del legislador al tachar las palabras "cualquier titular”, fue que no se debía disponer un periodo de prescripción para impugnar acciones de un titular que vulneren los precep-tos y la reglamentación aplicable al régimen. (10)
En consecuencia, de una lectura del Art. 42(c), luego de las enmiendas, se colige que el periodo prescriptivo de dos años aplica a las acciones, acuerdos u omisiones realizados por la Junta de Directores y el Consejo de Titu- *333 lares que violan la ley, la escritura matriz o el reglamento del condominio. Es claro que la aplicación del referido pre-cepto presupone que lo que se impugnará será un acuerdo, una omisión o una acción tomada por un órgano director con autoridad o por sus representantes, como sucedió en Pereira Suárez v. Jta. de Dir. Cond., supra. Es decir, aplica a las impugnaciones del titular contra las acciones, las omisiones o los acuerdos tomados por el Consejo de Titula-res o la Junta de Directores. En todo momento el Art. 42(c), se refiere a las reclamaciones de un titular hacia el Consejo de Titulares o la Junta de Directores, y no a la inversa.
Según reseñamos, las acciones de un titular que van contra lo establecido en la ley, el reglamento o la escritura matriz, se pueden impugnar mediante acciones judiciales interdictales; incluso, pueden dar lugar a una acción por daños. Art. 15 de la Ley de Condominios, supra. No obstante, no surge del texto de la ley que exista un término para ello. Es decir, el resultado de las enmiendas al Proyecto del Senado 1425 fue que en toda la Ley de Condominios no se estableció un límite de tiempo para objetar ese tipo de actuaciones por parte de un titular. Indicado esto, es forzoso colegir que el periodo prescriptivo de dos años no aplica de manera alguna a las acciones de impugnación del Consejo de Titulares o la Junta de Directores contra titulares que violen las disposiciones de la Ley de Condominios, la escritura matriz o el reglamento. Sencillamente, hay que reconocer que el legislador no estableció un término para ello.
III
A. Uso de los elementos comunes
 Acorde con lo antepuesto en el régimen de propiedad horizontal, el bien común sirve para el disfrute adecuado de lo privado. Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475 (2008). A esos fines, esta institución ju- *334 rídica establece “un dominio exclusivo de un bien inmue-ble, el cual ‘coexiste con un condominio forzoso e inseparable de los elementos comunes’ (Citas omitidas). Bravman, González v. Consejo de Titulares, supra, pág. 844. En esa concepción, todo el inmueble se erige para ha-cer viable la existencia del apartamento. M.J. Godreau, El condominio: el régimen de la propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, pág. 15.
De igual forma, es importante enfatizar que la escritura matriz en la horizontalidad forma un estado de derecho al cual se adhieren los titulares según van adquiriendo sus apartamentos. Bravman, González v. Consejo Titulares, supra. Es por ello que la Ley de Condominios requiere que la escritura pública se inscriba en el Registro de la Propie-dad y describa cada apartamento de forma detallada, al igual que la superficie de la totalidad de los apartamentos con los gastos, ganancias y derechos en los elementos comunes. Véanse: Arts. 2, 22, 23 y 24 de la Ley de Condominios, 31 L.P.R.A. secs. 1291, 1292, 1292a y 1292b. Véase, además, Bravman, González v. Consejo Titulares, supra. Asimismo, la ley exige que en la escritura matriz se preci-sen los elementos comunes y se especifique su uso y destino. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291. En relación con ese particular, la ley expresa que ese uso y destino solo podrá modificarse mediante el consenti-miento unánime de los titulares. Id.
Por tal razón y al aplicar los principios de convivencia reseñados al régimen, observamos que el derecho al uso de la propiedad privada está limitado por el deber de respeto al derecho ajeno, que tienen los demás titulares sobre sus respectivas propiedades y sobre su participación en los elementos. Por ello, no se puede menoscabar el derecho de los demás condominos sobre las áreas comunes, pues su titularidad es compartida y, en consecuencia, deben permanecer en un régimen de indivisión forzosa. Ri *335 vera Rodríguez v. Jta. Dir. I y II, supra; Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k. Otra limitación sobre el uso los elementos comunes es el fin para el cual se des-tinan en la escritura matriz. Rivera Rodríguez v. Jta. Dir. I y II, supra.
La Ley de Condominios regula las áreas de un inmueble que necesariamente constituirán elementos comunes generales. Art. 11 de la Ley de Condominios, 31 L.P.R.A. 129 li. Como es sabido, los elementos comunes se clasifican en generales “necesarios” o “voluntarios”, en atención al grado de indispensabilidad que tiene el elemento para el adecuado disfrute de las unidades privadas. Por su parte, los elementos comunes limitados se clasifican como aquellos que están destinados al uso exclusivo de dos o más apartamentos. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 129 lj.
En relación con los elementos comunes necesarios hemos dispuesto que sin ellos “resultaría inasequible el adecuado disfrute de los apartamentos”. (Enfasis suprimido). Cestero Aguilar v. Jta. Dir. Condominio, 184 D.P.R. 1, 12 (2011). En esta categoría se incluyen los elementos que son necesarios para garantizar la seguridad, conservación o existencia del edificio. íd.; Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 233 (2001). Por tal razón, estos quedan reservados para el uso de la totalidad de los condominos y no podrán ser susceptibles de enajenación o propiedad exclusiva de alguno o varios titulares. Id. Vale la pena señalar que en esa categoría se encuentra el vuelo, entendido este como el derecho a sobrelevar, y el techo. Art. 11 de la Ley de Condominios, supra.
Por otro lado, los elementos voluntarios no son imprescindibles para el adecuado disfrute de la propiedad individual y, en consecuencia, pueden ser atribuidos a uno o varios titulares en específico. Cestero Aguilar v. Jta. Dir. Condominio, supra. Es necesario que esa adjudicación se *336 efectúe en la escritura matriz del condominio. Sin embargo, en aquellas instancias en que la transferencia o con-versión se realice luego de la constitución del régimen, debe mediar el consentimiento unánime de todos los titulares. Art. 11 de la Ley de Condominios, supra. Véanse: Cestero Aguilar v. Jta. Dir. Condominio, supra; Brown III v. J.D. Cond. Playa Grande, supra. Cabe puntualizar que la propia Ley de Condominios impone la limitación de que la enajenación o constitución de este tipo de áreas como privadas no puede realizarse “sino para el beneficio del Consejo de Titulares o de uno o varios de los titulares de apartamientos o unidades en el condominio”. (Enfasis nuestro). Art. 11 de la Ley de Condominios, supra.
Por su parte, la azotea se clasifica como un elemento general voluntario. Art. 11 de la Ley de Condominios, supra. En particular, esta área se define como la cubierta de un edificio cuya “configuración permite su utilización como terraza o superficie por la cual se puede andar, es decir, es susceptible de utilización como si fuera otro piso”. Godreau, El Condominio, op. cit., pág. 96. Véase Consejo de Titulares v. Vargas, 101 D.P.R. 579, 583 (1973).
En torno a ello, en Consejo de Titulares v. Vargas, supra, al interpretar la anterior Ley de Propiedad Horizontal, dis-pusimos que la azotea, al ser un elemento general volun-tario, puede ser destinada al uso exclusivo de uno o algu-nos titulares. Sin embargo, aclaramos que no se puede transformar esa área en una cerrada al obstaculizar el ac-ceso de los demás titulares a esta. Igualmente, expresamos que el derecho al uso de la azotea no puede interpretarse como que incluye el derecho a la sobrelevación, pues nece-sariamente ese derecho está reservado a la comunidad.
Es preciso mencionar que los hechos en Consejo de Titulares v. Vargas, supra, eran similares a los de la contro-versia de autos. Allí, la azotea, según descrita en la escri-tura matriz, se modificó de elemento común general a limitado para el disfrute de los titulares del último piso. *337 Así pues, un titular de un apartamento de ese piso abrió un hueco en el techo de su apartamento para ganar acceso a la azotea. Construyó, también, una estructura cerrada sobre parte de la azotea y la cubrió con un techo de ma-dera, reservándose de esa forma el uso exclusivo de una parte de ese elemento. Interpretamos, pues, que “el ele-mento común de la azotea es uno cuya existencia puede regularse por acuerdo de los titulares individuales”. íd., pág. 584. Explicamos que, como en la escritura matriz se vislumbraba el cambio de uso de la azotea de “común general”(11) a “común limitado” para el disfrute de los titula-res del último piso, era innecesario el consentimiento uná-nime de los titulares exigido en el Art. 16. Expresamos que “ya por adhesión al régimen[,] los titulares quejosos habían consentido la modificación afectadora de la azotea”. íd., pág. 585. De esa forma, opinamos que la azotea no perdió su condición de elemento común al convertirse de general a común limitado por la disposición de la escritura matriz que permitía su asignación limitada a los titulares del no-veno piso. íd., pág. 587. No obstante, por razones de segu-ridad, decidimos que era necesario que la azotea permane-ciera abierta.(12) Con relación a la edificación construida, concluimos que afectó el derecho a la sobrelevación y con-travino el Art. 18 de la Ley de Propiedad Horizontal, supra, vigente en aquel entonces, que exigía el consentimiento unánime de los titulares para la construcción de pisos nuevos.
En la Ley de Condominios, el vuelo se clasifica como elemento común necesario. Art. 11 de la Ley de Condominios, supra. En Consejo de Titulares v. Vargas, supra, pág. 585, lo definimos como “la parte ideal del edificio *338 susceptible de ser construida, no un elemento material tangible, sino el espacio aéreo en la parte superior de la cubierta o techo que puede ser elevada la edificación”. Al ser un elemento común general necesario, el vuelo no puede ser objeto de división por parte de la comunidad y cualquier pacto en contrario es nulo. Álvarez Figueredo v. González Lamela, 138 D.P.R. 958 (1995). Sin embargo, de-bemos reiterar que “en lo que respecta a su extensión vertical [este elemento] es ilimitado”. Godreau, El Condomi-nio, op. cit., pág. 94. Así pues, en Álvarez Figueredo v. González Lamela, supra, decidimos que al sobrelevar un condominio no se invade su vuelo,(13) pues una vez cons-truida la nueva edificación, su techo se convierte en el te-cho del condominio, permaneciendo este como un elemento común general. Lo mismo sucede con el vuelo del edificio, el cual comenzará entonces a partir de la azotea de la nueva edificación. Álvarez Figueredo v. González Lamela, supra. En consecuencia, se entiende que el ejercicio de la sobrelevación no varía la naturaleza común general del vuelo. Id. Según concluimos en Alvarez Figueredo v. González Lamela, supra, el Consejo de Titulares tiene la facul-tad de sobrelevar el condominio y dedicar la edificación para beneficio particular si se obtiene primero el consenti-miento unánime de los titulares del inmueble y los permi-sos correspondientes.
Cabe precisar que esa interpretación sobre el vuelo y sus delimitaciones fueron recogidas en la Ley de Condominios, que enfatizó que siempre serán los titulares quienes decidirán unánimemente si se autorizan invasiones al vuelo. Godreau, La Nueva Ley de Condominios, op. cit., pág. 55. Claro está, el derecho de autorizar la sobrelevación no se puede ceder a un titular o a un grupo, ni siquiera por consentimiento unánime. Id., pág. 56. Es de- *339 cir, a un titular se le puede autorizar a construir o a techar, sin embargo, es el Consejo de Titulares el único que puede autorizar por unanimidad las sobrelevaciones frituras. Id.
Vemos que las enmiendas al régimen de propiedad horizontal fueron hechas teniendo como norte el principio de disfrute del bien privado y la sana convivencia. De esta forma, la Ley de Condominios permite realizar en las áreas comunes todo aquello que beneficie a un titular siempre y cuando con ello no se invada o menoscabe el disfrute de otro apartamento o el derecho de los demás titulares sobre esas áreas. Rivera Rodríguez v. Jta. Dir I y II, supra. Un claro ejemplo de lo anterior es el Art. 14(a) (31 L.P.R.A. sec. 12911 (a)), que permite el uso del techo —que es un elemento general necesario— de forma que un titular pueda instalar en él los equipos necesarios para el disfrute exclusivo de su apartamento. Sin embargo, eso podrá hacerlo si cuenta con el voto mayoritario del Consejo de Titulares, y en caso de que se afecte el disfrute de un apartamento, con el consentimiento del titular afectado. Igualmente, el inciso (b) de esas disposición permite que en los elementos comunes se instalen equipos o maquinarias para el disfrute de un número limitado de titulares, siempre que se certifique al Consejo de Titulares, a juicio de perito, que no se alterará la fachada o el diseño arquitectónico, la seguridad y solidez del inmueble, ni se menoscabará el disfrute de las restantes unidades. Art. 14(b) de la Ley de Condominios (31 L.P.R.A. sec. 12911 (b)). De no mediar esa certificación, se requerirá el consentimiento unánime de los titulares para esos cambios. Godreau, La Nueva Ley de Condominios, op. cit., pág. 25.
De igual manera, el Art. 11(a)(1) permite “el cierre o techado de patios, terrazas o áreas abiertas, así como la construcción de nuevos pisos sobre el techo o el terreno” luego de que se obtenga, de no estar contemplado en los planos del inmueble, el consentimiento unánime de los titulares. 31 L.P.R.A. sec. 1291i Así también, en reía- *340 ción a la construcción de nuevas obras por un titular, el Art. 18 de la ley dispone, en lo pertinente, que no se podrá construir pisos o hacer obras que afecten la seguridad, la solidez y la conservación del edificio sin el consentimiento unánime de los demás. Mientras, el Art. 16 autoriza que los titulares realicen —con el voto mayoritario de estos— obras necesarias para la conservación o seguridad del in-mueble y para el uso eficaz de los elementos comunes. 31 L.P.R.A. sec. 129 In. No obstante, si al hacer esas obras se afecta el disfrute de un titular, se necesita su consenti-miento para realizarlas. Id. De igual forma, si se trata de obras que afectan adversamente los elementos comunes del inmueble, es necesario el consentimiento unánime. Id.
Como rasgos generales del régimen, cuando se trata de la deliberación y sobre los asuntos que afectan adversamente el disfrute de la propiedad privada y el condominio, el requisito de la unanimidad es esencial para preservar los derechos fundamentales propios de dominio. Rivera Rodríguez v. Jta. Dir. I y II, supra. En cambio, en relación con los asuntos que tratan más bien sobre la conservación y administración de los elementos comunes, la ley se inclina a requerir solamente la aprobación de esos cambios mediante el consentimiento mayoritario. Id.
IV
En varias ocasiones hemos dispuesto que la doctrina de incuria se define como la “ ‘dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad’ ”. Molini Gronau v. Corp. RR. Dif. Púb., 179 D.P.R. 674, 687 (2010), citando a Comisión Ciudadanos v. G.P. Real Property, 173 D.P.R. 998, 1020 (2008). Véase, además, Aponte v. Srio. de Hacienda, E.L.A., 125 D.P.R. 610, 618 (1990). Esta doctrina proviene de la *341 máxima que la equidad auxilia a quien se mantiene vigilante en el reclamo de sus derechos y no a quien se duerme sobre la corriente sin mostrar excusas razonables para ello. Drake v. Old Nat. Trust Co., 871 N.E.2d 352, 356 (2007). La reclamación tardía va en detrimento de la parte contraria, sobre todo cuando se tuvo amplia oportunidad de reclamar diligentemente sus derechos.(14) Es un princi-pio profundamente enraizado en la doctrina del derecho común angloamericano que el paso del tiempo puede impe-dir que un reclamante reciba el remedio que solicita ante una corte. En ese sentido, la doctrina de incuria (laches) establece que la inacción de una parte por un largo periodo de tiempo y la legítima confianza de la otra parte, impide que se provean los remedios solicitados mediante reclamos tardíos. City of Sherrill v. Oneida Indian Nation of N.Y., 544 U.S. 197, 217-218 (2005).
Ahora bien, hemos resuelto que esta doctrina no aplica automáticamente por el mero transcurso del tiempo. Aponte v. Srio. de Hacienda, supra. En ese sentido, “cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares”. Pérez, Pellot v. J.A.S.A.P., 139 D.P.R. 588, 599-600 (1995). Al analizarse las distintas situaciones, se debe considerar si existe alguna justificación para la demora, el perjuicio que esta acarrea y el efecto sobre intereses privados o públicos involucrados. Comisión Ciudadanos v. G.P. Real Property, supra.
Es preciso señalar, además, que la incuria aplica cuando no existe un término reglamentario o en ley para realizar determinada acción, pero también se ha aplicado cuando existe un término que no se notificó debidamente.(15) Pueblo v. Valentín, 135 D.P.R. 245 (1994). De esa *342 forma, ante la ausencia de un término reglamentario, se ha aplicado el criterio de “término razonable”. Id. Véase Buena Vista Dairy, Inc. v. J.R.T., 94 D.P.R. 624 (1967).
Específicamente, la incuria “ ‘envuelve dos elementos, a saber: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias’ ”. Torres Arzola v. Policía de P.R., 117 D.P.R. 204, 209 (1986), citando a Pueblo v. Tribl. Superior, 81 D.P.R. 904, 912 (1960). De igual forma, “hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia”. Id. Se deben considerar los méritos y las circunstancias del caso, pues como se colige de lo expuesto, esta doctrina está vinculada a la idea fundamental de la equidad. Pueblo v. Tribl. Superior, supra. Es decir, al aplicarse esta doctrina, se apela a la razón y a la conciencia, ante la necesidad de encontrar y proveer soluciones justas. Id.
Discutido el marco jurídico aplicable, pasemos a resolver los planteamientos del Consejo de Titulares del Condo-minio Torre de Miramar.
V
En el caso de autos, la cláusula cuarta de la escritura matriz en su inciso A, al describir las áreas privadas del Condominio especifica lo siguiente:
—Fourth: The above-described building is composed of the following elements:
-----A: - PRIVATE AREA........................................... ---------One. Three apartments on each one of the first nine (9) floors above the ground floor, two apartments and one studio apartment on the tenth (10th) floor and three (3) penthouse apartments on the eleventh (11th) floor with their penthouse roof-terraces and uncovered roof areas on the twelfth (12th) *343 floor, making a total of thirty three (33) apartments. (Énfasis nuestro). Apéndice del Certiorari, pág. 143.(16)
Más adelante, la escritura identifica al techo como ele-mento común y expresa que este mantendrá tal condición, salvo que se disponga otra cosa. Sobre este particular, la cláusula cuarta, inciso (B), subinciso cuarto de la escritura matriz, dispone específicamente que:
-----B.- General Common Elements.
-----Four. The stairway and elevators; elevator machine room, water tank and ventilation enclosures on the roof, foundations, columns, and structural walls, driveways and paved areas except parking spaces, hallways on each floor and all the roofs (except as otherwise specified). (Énfasis nuestro). Apéndice del Certiorari, págs. 143-144.
Notemos que, según lo establecido en la escritura ma-triz, aunque no se hace alusión directamente a ello, el área que está sobre el techo del piso doce es una azotea, pues es una zona sobre la cual se puede caminar y se tiene acceso desde un elemento común general. En vista de ello, y se-gún lo establecido en el Art. 11 de la Ley de Condominios, supra, colegimos que el elemento de la azotea del Condo-minio es un elemento común general voluntario. Es preciso señalar también que la designación del techo como un ele-mento común no puede estar sujeta a “que otra cosa se indique”, pues el techo es un elemento común necesario no susceptible de ostentar cualquier otra calificación. Véase el Art. 11 de la Ley de Condominios, supra.
*344 Por su parte, el Consejo aduce que su causa de acción contra el recurrido para eliminar la perforación en el techo no estaba prescrita en conformidad al Art. 42(c); por ser un elemento común necesario que no admite que se transfiera su control o posesión y, por lo tanto, cualquier pacto en contrario será nulo. Concluimos que le asiste la razón al peticionario en cuanto a que la causa de acción no estaba prescrita, pero por fundamentos distintos.
Debemos aclarar que aunque el techo es un elemento común necesario, lo que tajantemente prohíbe la ley es que se transfiera su titularidad, posesión o control. Así pues, es evidente que un pacto de esa naturaleza es nulo. Art. 11 de la Ley de Condominios, supra. Empero, la perforación del techo es un cambio realizable si se obtiene el consenti-miento unánime de los titulares y los permisos corres-pondientes. Previo a un cambio de esa naturaleza, era ne-cesario verificar los efectos de esa obra sobre la seguridad, solidez y conservación del edificio. Art. 18 de la Ley de Condominios, 31 L.P.R.A. sec. 1291p. Sin embargo, aunque la perforación del techo es un acto realizable y no expresa-mente prohibido en la ley, debido a que fue un cambio rea-lizado por un titular sin contar con el consentimiento uná-nime conforme al Art. 18, supra, no le aplica el periodo prescriptivo contenido en el Art. 42(c).(17) Según discutimos antes, el Art. 42(c) aplica exclusivamente a las acciones, las omisiones o los acuerdos tomados por el Consejo de Titula-res o la Junta de Directores, y no a las acciones unilatera-les de un titular que sean contrarias al régimen.
*345 De otra parte, en relación con la estructura de concreto debemos adoptar los mismos criterios que fundamentan el análisis expuesto, ya que nos encontramos ante otro cam-bio permitido por la Ley de Condominios. Como enuncia-mos previamente, la sobrelevación no es una invasión al vuelo, por ser este un elemento inacabable. Además, el Art. 11 de la Ley de Condominios expresa específicamente que la construcción de nuevos pisos es permisible mediante el consentimiento unánime. Véase, además, el Art. 18, supra. No obstante, en el caso de marras la sobrelevación fue un cambio realizado por un titular y, por lo tanto, tampoco está sujeto al periodo prescriptivo de dos años.
En cuanto a la superficie sobre el techo, las partes esti-pularon correctamente que esta es una azotea, pues según mencionamos, es un área habilitada para caminar sobre ella, y existe una escalera comunal que permite el acceso a esta.(18) Como especificamos antes, la azotea es un ele-mento común voluntario. Por ello, puede variarse su uso mediante el consentimiento unánime de los titulares. A esos efectos, también es preciso reconocer que estatutaria-mente se autoriza a los titulares —con el voto mayorita-rio— a realizar las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elemen-tos comunes. Art. 16 (31 L.P.R.A. sec. 1291n). Empero, si la obra para el uso eficaz del elemento afecta o menoscaba el disfrute de un titular en particular, se necesita el consen-timiento de este para que se realice el cambio. Id.
De la escritura matriz surge que la azotea del Condomi-nio es un elemento común general. La instalación de las losetas en la azotea puede calificarse como una obra reali-zada por el titular para usar eficazmente a ese elemento común. Sin embargo, las referidas instalaciones no podían realizarse por un titular unilateralmente, pues la azotea, *346 según lo dispuesto en la escritura, es un elemento común general.(19) Así pues, los cambios a este elemento común para promover su uso eficaz podían realizarse si se contaba primero con el acuerdo de la mayoría de los titulares. Véase el Art. 16 de la Ley de Condominios, supra. Es decir, estas obras habrían constituido un cambio perfectamente válido de haberse contado con el consentimiento requerido por ley. Por su parte, la instalación de las barandas de metal que cerró el área superficial de la azotea que queda justo sobre el apartamento PH-A, limitó el acceso de los demás titulares a este elemento. No obstante, es preciso apuntar que en vista de lo dispuesto en Consejo de Titulares v. Vargas, supra, sobre la necesidad de mantener el área de la azotea con libre acceso por razones de seguridad, el cercamiento de un área de ese elemento no era permisible.
En fin, exceptuando este último cambio, nos encontra-mos ante una variedad de obras realizadas a elementos comunes, que eran aceptables bajo la Ley de Condominios, ya sea mediante el consentimiento unánime o la aproba-ción por voto mayoritario del Consejo de Titulares. Si todos esos cambios se hubieran realizado por el Consejo de Titu-lares o la Junta de Directores, habrían estado sujetos al periodo de prescripción de dos años que dispone el discu-tido Art. 42(c). Empero, hemos concluido que ese articulado no aplica cuando se trata de las acciones unilaterales de un titular. Cónsono con lo enunciado, los cambios en el techo y la azotea que prexistían a la adquisición del apartamento PH-A por el señor Ramos Vázquez, no están sujetos al pe-riodo de impugnación de dos años. Ello es así, aunque el recurrido adquirió el apartamento tal como se encontraba y con los elementos comunes en su estado manifiesto. Véase el Art. 15 de la Ley de Condominios. Este debió pre-ver que la realidad extrarregistral de la propiedad que ad- *347 quirió no concordaba con la realidad establecida en el registro.
Ahora bien, cabe preguntarse ¿por qué el Consejo de Titulares no actuó antes y esperó a la construcción del Jacuzzi que impugnó las construcciones sobre la azotea? No surge del expediente evidencia ni alegación alguna de que antes de 1999 o subsiguientemente hasta que fue presen-tada la demanda en 2010, algún titular, el Consejo o la Junta, hayan reclamado o requerido a los dueños anterio-res del apartamento PH-A la remoción de las construccio-nes en el techo y en la azotea del Condominio. Ese hecho surge diáfanamente de las estipulaciones que las partes presentaron ante el foro primario.(20)
También es un hecho estipulado que en la azotea del Condominio están ubicados los respiraderos, la cisterna de agua y el cuarto de máquinas de los ascensores.(21) Por lo tanto, el personal contratado por el Condominio frecuenta acudir a ese lugar para brindar el mantenimiento necesario. Esa prueba, más todo el tiempo transcurrido, nos llevan a concluir que las construcciones objetadas no pudieron pasar desapercibidas para el Consejo ni la Junta.
En este contexto, es importante recalcar que así como la Ley de Condominios impone un término prescriptivo para evitar el retraso negligente en el reclamo de derechos y el abuso del derecho a los titulares, igualmente el Consejo de Titulares y la Junta de Directores tienen responsabilida-des estatutarias que no se deben ejercer de manera arbi-traria, irrazonable o cuando resulte a su conveniencia. Re-cordemos que el Art. 38D(i) obliga a la Junta de Directores a cumplir con las disposiciones de la Ley de Condominios, *348 del reglamento y los acuerdos del Consejo de Titulares. 31 L.P.R.A. sec. 1293b-4. Asimismo, como señalamos antes, el Art. 38(k) expresa que el Consejo de Titulares deberá to-mar aquellas medidas necesarias y convenientes para el mejor servicio común. 31 L.P.R.A. sec. 1293b.
En vista de lo anterior, concebimos que los parámetros y principios que fundamentan el régimen de propiedad horizontal, le aplican tanto al Consejo de Titulares, así como a la Junta de Directores y a los titulares. Por consiguiente, es impermisible que en cualquier momento, sin importar las consecuencias económicas que ello tenga sobre un nuevo adquirente —como es el caso del recurrido— se re-clame y exija que se devuelvan las áreas comunes al estado original cuando ha transcurrido un periodo de tiempo irrazonable. Más aún, cuando no se demostró que se de-nunciaron los cambios reclamados ni se presentó una ra-zón que justificara tal dilación. (22) Ese proceder afecta ne-gativamente la estabilidad del régimen de propiedad horizontal. Asimismo, propicia las acciones arbitrarias y selectivas de las responsabilidades de los organismos ad-ministrativos del condominio.
Por otra parte, en nuestro esquema de horizontalidad, la doctrina de equidad de la incuria nunca se ha aplicado. Como bien argumenta el recurrido en su alegato, no tene-mos duda de que el Consejo ha incurrido en dejadez e in-curia en el reclamo de sus derechos y la práctica de sus responsabilidades.(23) Por tal razón, consideramos que es *349 injusto ordenar la demolición de las estructuras habidas en la azotea de La Torre a expensas del titular que las adquirió. La inacción y la desidia de la Junta de Directores y del Consejo durante todo el tiempo transcurrido en rela-ción a sus responsabilidades estatutarias, no pueden ser avaladas por este Tribunal. Tal razonamiento es ineludi-ble, cuando estos organismos tienen la obligación de actuar diligentemente en la defensa de su propiedad y no dejar transcurrir largos periodos de tiempo para ejercer sus derechos.
Además, en ningún momento el Consejo acreditó justa causa para la tardanza en la presentación de su acción. Igualmente, debemos considerar que el perjuicio de conce-der el remedio tal como nos solicita el Consejo de Titulares obraría contra una persona a la que no se le puede atribuir responsabilidad de los cambios realizados sobre los ele-mentos comunes. Proveer el remedio solicitado premiaría la morosidad de los órganos administrativos en el régimen de propiedad horizontal, en perjuicio de los nuevos adquirentes.
Es preciso reiterar que las circunstancias del caso de autos son muy particulares. Del expediente surge meridia-namente claro que el recurrido no realizó los cambios im-pugnados por el Consejo, y luego de diez años se pretende exigir que se devuelva la azotea a su estado original a costa suya. Según puntualizamos, el Consejo de Titulares tiene la facultad última de administrar los elementos comunes, y el desempeño de esa responsabilidad, no está sujeto a un periodo prescriptivo. Opinamos pues, que el Consejo de Ti-tulares no puede perder nunca esta prerrogativa. Ahora bien, su dejadez, incuria y falta de acción afirmativa no pueden pasar inadvertidamente ante los antecedentes tác-ticos que dieron origen al caso.
Nuestro deber es impartir justicia y en este caso en particular debemos mantener un balance entre las exigencias antagónicas presentadas. A la luz de todo lo anterior, en *350 aras de proveer un remedio justo, en equidad decidimos que por ser construcciones que tenían que ser aprobadas por los titulares en unanimidad, debe restablecerse el te-cho a su estado original eliminando el hueco perforado, al igual que debe removerse la estructura “tipo casita” exis-tente sobre la azotea. Sin embargo, en consideración a que el recurrido no realizó los cambios impugnados y ante la patente incuria del Consejo de Titulares, será responsabi-lidad de este último corregir esas alteraciones exclusiva-mente a sus expensas.
Asimismo, en cuanto a las losetas, los tiestos y las ba-randas que se encuentran en la azotea, será responsabili-dad del Consejo removerlos, al igual que sufragar los gas-tos de los trabajos que sean necesarios para ello. En cuanto al jacuzzi, será responsabilidad del recurrido removerlo, según se estableció en el dictamen del foro apelativo intermedio.
Una vez más, reafirmamos que es responsabilidad del Consejo de Titulares y de la Junta de Directores velar por el buen uso y aprovechamiento de los elementos comunes. Empero, ese deber tiene que cumplirse diligentemente para evitar situaciones como la presente, en la que se afec-tan adversamente los derechos de un nuevo adquirente. Por su incuria, el Consejo y la Junta de Directores no pue-den recibir el remedio solicitado.
Por último, debemos recalcar que “[c]omo accesorio del derecho de propiedad exclusivo sobre el apartamento o local, está el derecho de cada titular al disfrute y aprovecha-miento de los elementos comunes del edificio, existiendo, entonces, una situación de copropiedad a favor de cada titular con relación a los elementos comunes”. J.R. Vélez Torres, Curso de Derecho Civil: los bienes y los derechos reales, Madrid, Ed. Offirgraf, 1983, T. II, pág. 166.
Según lo anterior, es imprescindible aclarar los funda-mentos de los derechos reales que nos motivan a ordenar la remoción de las construcciones en la azotea del edificio. El *351 Código Civil de Puerto Rico, en su Art. 280, define derecho de propiedad como aquel “por virtud del cual tona cosa per-tenece en particular a una persona con exclusión de cual-quiera otra.” 31 L.P.R.A. sec. lili. De esta forma, la “pro-piedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes”. íd. En consecuencia, “el propietario tiene acción contra el te-nedor y el poseedor de la cosa para reivindicarla”. íd.
En el caso de autos, como la propiedad en controversia está sometida al régimen de propiedad horizontal, es obli-gatorio colegir que los elementos comunes son objeto de copropiedad a favor de cada titular del condominio. En con-secuencia, no podemos concebir forma alguna en que estos titulares puedan perder su prerrogativa de ser reivindica-dos en la posesión y el dominio de los elementos comunes, incluyendo como en este caso, las áreas de la azotea y el techo. A esos efectos, el Consejo de Titulares es guardián de ese derecho propietario que tienen todos los propietarios. No obstante, el hecho de que el Consejo no fue diligente en el cumplimiento de tal tarea, no hace legítima una cons-trucción que atenta contra el régimen catastral que impera en el sistema de horizontalidad. Precisamente, recono-ciendo esto, en Bravman, González v. Consejo Titulares, supra, concluimos que la Ley de Condominios impide la adquisición por prescripción adquisitiva extraordinaria o usucapión de los elementos comunes. Asimismo, determi-namos que “no se puede variar el uso y destino ni la des-cripción registral del bien adquirido sin el consentimiento unánime de todos los titulares”. íd.
Siendo ello así, resultaría contradictorio resolver que en esta controversia las construcciones pueden permanecer, porque hubo incuria por parte del Consejo de Titulares. Aunque el recurrido no plantee que adquirió la azotea por prescripción adquisitiva extraordinaria, el efecto de decidir que las construcciones pueden permanecer sería permitir que este titular se apropie de facto de un elemento común. *352 Así, en un periodo menor que aquel dispuesto para la usu-capión —que resolvimos no aplica a elementos comunes— estaríamos permitiendo el cambio de uso y destino de la azotea de un condominio sin el consentimiento unánime de los titulares.
En atención a ello, decidir que permanezcan las estruc-turas que afectan a la azotea y al techo sería privar a los titulares de su derecho propietario sobre estos elementos comunes. Así también, estaríamos permitiendo que la rea-lidad extrarregistral de las condiciones del Condominio no corresponda con las descripciones habidas en el Registro de la Propiedad. Al ordenar la remoción de las construccio-nes en la azotea y el techo a costa del Consejo de Titulares, se reivindica el derecho de propiedad que tiene este último sobre los elementos comunes y se le impone una sanción por su desidia e incumplimiento con sus funciones por un periodo de más de diez años. Asimismo, se libera al titular afectado de responder por las construcciones que no realizó y se armoniza la realidad extrarregistral de los elementos comunes con las descripciones según dispuestas en el Re-gistro de la Propiedad. Proceder de otra forma, promovería una discordancia en tales descripciones y la realidad del estado de la propiedad sometida al régimen de la horizontalidad.
VI
Por los fundamentos que anteceden, se revoca en parte la sentencia del Tribunal de Apelaciones. Resolvemos que las construcciones en el techo y la azotea del Condominio La Torre de Miramar no están sujetas al periodo de pres-cripción dispuesto en el Art. 42(c), ya que ese término no aplica a las acciones realizadas por los titulares. Sin embargo, por su desidia, falta de diligencia y craso incumpli-miento de sus deberes, el Consejo de Titulares deberá asu-mir los gastos que conlleve cerrar el hueco en el techo, así *353 como de remover las losetas, las barandas, los tiestos y la estructura de concreto ubicados en la azotea.
Por otro lado, se confirma la sentencia en cuanto a que el Sr. Edwin Ramos Vázquez tiene que remover el “Jacuzzi” y todo otro equipo o instalación eléctrica y pluvial accesoria a este.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió sin opinión escrita. El Juez Asociado Señor Estrella Martínez emitió una opinión de conformidad y disidente. El Juez Asociado Señor Kolthoff Caraballo no intervino.

 El Condominio está ubicado en la calle Miramar Núm. 709 en San Juan. Según surge de la escritura matriz, fue sometido al régimen de propiedad horizontal el 23 de septiembre de 1962. (Instrumento Público Núm. 14 otorgado por el notario *319 John F. Malley, en San Juan, Puerto Rico). La escritura está inscrita al Folio 154 vuelto del Tomo 160 de Santurce Sur, Registro de la Propiedad de San Juan, Sección Primera, Finca Núm. 5,081.

 La demanda contenía dos causas de acción en cobro de dinero.

 El hueco en el techo que da acceso a la azotea, la escalera, la estructura en concreto, las barandas, los tiestos y las losetas, estaban presentes cuando el recu-rrido compró el apartamento.

 Los errores 1 y 2 expresan lo siguiente:
“Erró el [Tribunal de Apelaciones] al concluir que la causa de acción del Consejo que perseguía eliminar la perforación y/o hueco en el techo del Condominio La Torre Miramar realizado por anteriores dueños del Apartamiento PH-A está prescrita de conformidad con el Artículo 42(c) de la Ley 104, 31 L.P.R.A. sec. 1293(f).
“Erró el [Tribunal de Apelaciones] al declarar prescrita la causa de acción del Consejo en torno al hueco y/o perforación realizado en el techo del Condominio La Torre Miramar, siendo el techo un “elemento común general necesario” que no ad-mite, ni con el consentimiento unánime de los condominos, que se transfiera el control o posesión del mismo y que cualquier pacto en contrario será nulo”. Certiorari, pág. 8.

 Los señalamientos de error 3, 4 y 5 expresan que:
“Erró el [Tribunal de Apelaciones] al concluir que la causa de acción del Consejo que perseguía eliminar la estructura de bloques y hormigón con techo y puerta cons-truida por anteriores dueños del Apartamiento PH-A sobre el hueco en el techo está prescrita de conformidad con el Artículo 42(c) de la Ley 104, 31 L.P.R.A. sec. 1293(f).
“Erró el [Tribunal de Apelaciones] al declarar prescrita la causa de acción del Consejo en torno a la estructura de bloques y hormigón construida sobre el hueco y/o perforación en el techo del Condominio La Torre Miramar, siendo dicha construcción una invasión al vuelo del edificio.
*324 “Erró el [Tribunal de Apelaciones] al declarar prescrita la causa de acción del Consejo en torno a la estructura de bloques y hormigón construida sobre el hueco y/o perforación en el techo del Condominio La Torre Miramar, siendo dicha construcción el ejercicio del derecho de sobrelevación sin contar con el consentimiento unánime de los condominos”. íd.

 El señalamiento de error sexto establece específicamente que:
“Erró el [Tribunal de Apelaciones] al concluir que la causa de acción del Consejo en relación a las losetas instaladas en la azotea y a las barandas en acero galvani-zado también instaladas en el área de la azotea que esta [sic] inmediatamente sobre el Apartamiento PH-A está prescrita de conformidad con el Artículo 42(c) de la Ley 104, 31 L.P.R.A. sec. 1293(f)”. íd.

 Exposición de Motivos de la Ley Núm. 103-2003 (2003 (Parte 1) Leyes de Puerto Rico 355).

 Informe Conjunto del Proyecto del Senado 1425 de las Comisiones de Vi-vienda, Banca, Asuntos del Consumidor y de lo Jurídico del Senado, de 12 de noviem-bre de 2002. 4ta sesión extraordinaria, Í4ta Asamblea Legislativa.

 Es preciso apuntar que el individuo titular no equivale al Consejo de Titula-res, aunque en este último esté compuesto por titulares. En torno a este particular, resulta sencillo distinguir la definición jurídica de lo que constituye el Consejo de Titulares y cómo el concepto no es equiparable o análogo al concepto de titular. Ello, pues, el Art. 21 claramente expresa que “siempre que en esta ley se haga referencia al Consejo de Titulares se entenderá la totalidad de ellos”. (Enfasis suplido). 31 L.P.R.A. sec. 1291s.

 Véase R del S. 1425, entrillado electrónico del texto aprobado en votación final por el Senado, 14 de noviembre de 2002.

 Entiéndase “voluntario”.

 Concretamente, consideramos allí que la azotea libre y despejada que per-mitió el descenso de un helicóptero, fue un elemento crucial entre la posible muerte y la vida de personas, tras el incendio en un multipisos de Avianca en Bogotá, Colombia. Consejo de Titulares v. Vargas, 101 D.P.R. 579, 586 esc. 7 (1973).

 En reconsideración, se revocó a Álvarez Figueredo v. González Lamela, 134 D.P.R. 374 (1993).

 Northwoods Environmental Institute v. Minnesota Pollution Control Agency, 370 N.W.2d 449 (1985).

 Véanse: Colón Torres v. A.A.A., 143 D.P.R. 119 (1997); Pérez, Pellot v. J.A.S.A.P., 139 D.P.R. 588 (1995).

 Nótese que en la página inmediatamente anterior de la escritura matriz se establece:
“... the eleventh floor contains three (3) penthouse apartments; the twelfth (12th) floor contains three (3) covered terraces each of which belongs to the penthouse apartment immediately below”. Apéndice del Certiorari, pág. 142.
De lo anterior podemos concluir que los apartamentos “penthouse” constan de dos pisos, el once y el doce. En consecuencia, la superficie de la parte techada del piso doce vendría siendo el área de la azotea del edificio.

 Aunque la Ley de Condominios, supra, aplica retroactivamente, es preciso señalar que esta enmendó la Ley de Propiedad Horizontal y le añadió al Art. 18 el requisito de obtener “los permisos de las agencias pertinentes”. Art. 18 de la Ley de Condominios, 31 L.P.R.A. sec. 1291p. M.J. Godreau, La Nueva Ley de Condominios, San Juan, Ed. Dictum, 2003, pág. 86. Véase Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485 (2011). En el caso de autos, al haberse realizado con anterioridad a la aprobación de la Ley de Condominios, estas construcciones no requerían los permisos de las agencias correspondientes, pero sí el consentimiento unánime de los titulares, pues era el requisito previsto al momento de su realización.

 Véase e.g. Consejo de Titulares v. Vargas, supra, pág. 583, cuando define la azotea como “la cubierta llana de un edificio dispuesta para poder andar por ella de donde se deduce según su configuración física un techo puede o no ser al mismo tiempo azotea”. (Citas omitidas).

 No se demostró, por otra parte, que esta obra afectara el uso de las diferen-tes maquinarias ubicadas en la azotea.

 La estipulación “B” de la ponencia expresa lo siguiente:
“A pesar de que la escritura matriz no menciona el concepto azotea, ello es realmente lo que existe en la parte superior de La Torre por cuanto existe acceso mediante una escalera. Dicha azotea es un área sobre [la] cual se puede caminar”.

 La estipulación “C” de la ponencia expresa lo siguiente:
“En la azotea, existen filtros o respiraderos, el cuarto de maquina [sic] de los ascensores, la cisterna de agua de La Torre, por lo que el personal contratado por el Condominio accede hasta allí para brindarles el mantenimiento debido”.

 La estipulación “I” de la ponencia expresa como sigue:
“Ninguno de los pasados miembros de la Junta de Condominos o residente al-guno ha realizado acercamientos en los diez (10) años que lleva como residente en La Torre el señor Ramos Vázquez relacionado a los cambios realizados por los pasados dueños del Penthouse A. Los mismos pre existían a la llegada del señor Ramos Vázquez, así se corroboró el día de la segunda inspección ocular al expresarlo la representante de la Junta de Condominos de La Torre, quien responde al nombre de “Ana Leticia”.

 Alegato del recurrido, pág. 18. Véase, también, la Solicitud de desestima-ción, Apéndice del Certiorari, pág. 135.